No. 31,947

OLIVER FARM EQUIPMENT SALES COMPANY, *Appellant,* v. E. L. RICH, *Appellee.*

(42 P. 2d 604)

Opinion filed April 6, 1935.

*Harry O. Trinkle,* of Garden City, and *Oscar D. McCollum,* of Kansas City, Mo., for the appellant.

*Roy D. Armstrong,* of Scott City, and *Fred J. Evans,* of Garden City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action arose out of the sale of a Hart-Parr tractor. When the tractor was purchased, the defendant was engaged in operating a large farm of about 1,000 acres, and was told by the dealer that he should have an 18-36 tractor. The manufacturer of these tractors made three sizes—12-24, 18-36 and 28-50. The figures indicate the power exerted by the machine, eighteen horsepower at the drawbar and thirty-six horsepower on the belt. Defendant told the seller what was required, and was informed he would need 18-36, and that was what he purchased.

The defendant had given a promissory note for $675 due on the fifteenth day of July, 1929, and a second-hand tractor. The plaintiff had taken over the business of the Hart-Parr company, had pos-

session of the note and brought an action on it. The contract was made in July, 1928, and among other things provided that the retention or possession for more than six days after first day's use of said machinery, shall be construed as conclusive evidence that the warranty has been fulfilled. The tractor was warranted to be reasonably fit for the purpose for which it was made, an obligation which the law would impose independently of the contract or order under which the article was purchased.

The case was here before and was submitted on the pleadings and an opening statement of plaintiff. (*Oliver Farm Equipment Co. v. Rich,* 134 Kan. 23, 4 P. 2d 465.) Plaintiff there moved for judgment on his note, contending that defendant was precluded from the defense of failure of consideration by the terms of the written warranty made a part of the contract or order for the machine. On the other hand, defendant contended that the express warranty contained in the order did not preclude the existence of either an express or an implied obligation on the part of the manufacturer to deliver a tractor reasonably fit for the purpose designed and made.

The court held that where a manufacturer sells a machine on a written order, describing it, an express warranty of quality will not exclude an implied warranty that the machine will do the things necessarily implied by the description. There is nothing in the express warranty which destroys the obligation of the seller to deliver the engine described in the order. It is a matter of common knowledge that an engine that will neither develop nor sustain power is of no value.

This having been decided, so much was settled and the trial and proof showed that the former opening statement of counsel in the case was generally verified by the testimony. There were numerous tests made which proved that the engine lacked the power it was designed to exert; and the agents and mechanics of plaintiff came and undertook to remedy the defects and make it exert more power, but when it was called on for greater power it could not exert it, and therefore was worthless to the purchaser who had bought it for heavy work which it could not perform.

A variety of tests were made by the mechanics and experts sent out by plaintiff to correct the defects in the tractor. They said it would not produce the power, but they could not understand what

was the trouble with it. The warranty which was agreed to says the Hart-Parr tractor is well made, of good material and workmanship. It is guaranteed to burn kerosene and to develop as much power from it and use no more of it than of gasoline; if any part of the tractor breaks within one year from the date of delivery because of faulty workmanship (batteries, spark plugs or other electrical equipment excepted) a new part will be furnished by the manufacturer free of charge at Charles City, Iowa.

A reading of the testimony in the record satisfies us that it is substantially the same as was set forth in the opening statement of counsel in the first trial. There were a few things that could be done on the farm with the tractor where not much power was required, but when heavy work was to be done in plowing or harvesting it failed to operate successfully. The experts worked on the tractor, but failed to develop power. Late in 1928 defendant undertook to cut and combine maize, but it failed to work, as it had failed in the wheat field. When he slowed down so as to do the work, the motor would stall. In one such case a half day was spent trying to make the machine work, and it was found impossible, and defendant resorted to an old motor which cut and combined it without any trouble.

Defendant had occasion to use the tractor in the spring of 1929, and in one of the tests made by mechanics and experts sent out by plaintiff, they represented they had put a new block in the motor, but it did not work any better; and later a test was made by pulling it with another tractor, upon the theory that if the small tractor would plow the same hard and dry land in high gear, the plaintiff would give him his note back or give him another and better tractor. Cook, the owner of the small tractor, had no trouble in plowing the land, going in high gear. But plaintiff failed to carry out its contract.

It was well shown that the tractor was weak and that no amount of treatment of mechanics and experts of plaintiff could develop the power in it. Defendant had tried hard enough to have the defects cured, and plaintiff's mechanics sent out in 1928 and again in 1929 tried, but without success; even trying for more than a year after the six-day test mentioned in the contract. In fact, plaintiff and its experts concluded that they could not develop the power it was represented to have, and experts found it was weak and not as represented, but were unable to find or cure the trouble.

A number of complaints are made on rulings on admission of evidence. One was a question as to the kind of a tractor the plaintiff should buy to pull a certain plow, and the dealer told him that an 18-36 horsepower was the tractor for him for such a plow. This was competent to show the kind of work the tractor was designed and made for, and in view of the ruling on the first trial that it was designed for eighteen-horsepower at the bar, it was not material error or important.

Another objection was in allowing the defendant to testify that the tractor was worthless to him, which testimony was not stricken out on motion of plaintiff. That was an issue in the case as made by the pleadings, and the tests were made showing that it was of no value to the plaintiff who purchased it for work which it failed to perform. It may not be the best evidence of the fault in the tractor, but it is clear that it was not material error.

The plaintiff sent out advertising matter which was distributed in the neighborhood. It advertised the Hart-Parr tractor; that it would pull 1,535 pounds at three miles an hour; that this power was made with the cheap, low grade of fuels; that they saved one-half of the gasoline and added to the season's profits; that Hart-Parr will pull seven plows on a special occasion without straining or laboring; that the surplus power is there when it is needed, and that the Hart-Parr 18-36 is built for all kinds of heavy farm work, and actually develops 32-43 power in official tests. It is equipped for all kinds of farm and custom work developing a speed of four and one-fourth miles per hour. This with a good deal of elaboration was distributed generally and was mailed to the mailing lists of the agent. He said he knew Mr. Rich had been brought to his office when the purchase was made, but he could not say that he delivered one of the circulars to him, but that it was likely he did. This evidence was offered to show what the manufacturer designed as to the power that would be exercised by the 18-36 tractor, and that it was constructed to supply the designated power. It is deemed to be admissible to show that it would exert the power which it was marked and recommended to do and sufficient to show the power that plaintiff designed it to exert.

Complaint is made of instructions 6, 7 and 9, which show adoption of the rules determined by the court on the first trial, but these are without material error.

Instruction 22 is complained of, but it is favorable to the plaintiff, and is as follows:

"You are instructed that if you find that the tractor in question was defective, that is, that it would not do wholly the work for which it was intended, but that the defendant used said tractor and that it partially did the work for which it was intended although in some degree defective, then and in such case you would be authorized to allow the plaintiff such sum as you believe from the evidence the plaintiff is fairly entitled to, provided you find that the defendant never returned or offered to return the tractor to the plaintiff; that is, you would be authorized to allow the plaintiff the fair and reasonable value of the tractor, taking into consideration all the facts and circumstances as shown by the testimony."

It will be seen that the instruction advises the jury that if the tractor was defective and that it partially did the work for which it was designed, the plaintiff might be allowed the fair and reasonable value of the tractor as shown by the testimony. Plaintiff has no room to complain of the instruction.

We see no reason why the judgment should not be affirmed, and it is so ordered.