No. 29,880.

THE OLIVER FARM EQUIPMENT COMPANY, *Appellee,* v. E. L. RICH, *Appellant.*

(4 P. 2d 465.)

Opinion filed November 7, 1931.

*Roy D. Armstrong,* of Scott City, and *Fred J. Evans,* of Garden City, for the appellant.

*H. O. Trinkle,* of Garden City, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This is an action to recover the amount due on a promissory note. The plaintiff prevailed, and the defendant appeals.

The petition contains the usual allegations, stating a cause of action on the note and asked judgment for $675, with interest at eight per cent from July 30, 1928. The answer, duly verified, admits the execution of the note and denies all other allegations contained in the petition. It is further alleged that the only consideration for the note was a part of the purchase price of a Hart-Parr tractor, size 18 x 36; that at the time of the purchase of the tractor the defendant was engaged in farming and owned and operated machinery and equipment of a size and character which required a

tractor of the size designated to successfully pull such machinery; that the tractor was manufactured and designed to develop the power common to tractors of the 18 x 36 size; that on receiving the tractor tests were made and it was found that it would not pull the load it was designed and intended to pull, and was of no use or value to the defendant. Defendant tendered a return of the tractor to the plaintiff and asked that the note be surrendered and canceled.

The plaintiff replied, admitting that the consideration for the note was the purchase of a tractor, size 18 x 36, and alleged that the tractor was purchased upon a written order, a copy of which was attached to the reply and made a part thereof. The order was, in part, as follows:

"TRACTORS.

"CUSTOMER'S ORDER FOR HART-PARR TRACTORS.

To J. W. Shull (Dealer)   (Town) Grigston   (State) Kans

Please enter my order for the following:

| Quantity | Size and Description | Price |
| --- | --- | --- |
| One | 18 x 36 h. p. Standard | $1,350.00 |

To be delivered to me at   At Once

"I am retaining a copy of this order, which, together with the agreement and warranty on the back thereof, is understood to be the entire contract between us.                                                  E. L. RICH.

"WARRANTY, AGREEMENT AND PROPERTY STATEMENT.

"Hart-Parr tractors, if new, are subject to the following warranty of the manufacturer. No agent or dealer has authority to alter, add to or modify the warranty, which is fully understood and agreed to by the customer.

"This Hart-Parr tractor is well made, of good materials and workmanship.

"It is guaranteed to burn kerosene, to develop as much power from it and to use no more of it than of gasoline.

"If any part of the above tractor breaks within one year from date of delivery because of faulty material or workmanship (batteries, spark plugs, or other electrical equipment excepted, which are not warranted) a new part will be furnished by the manufacturer free of charge f. o. b. Charles City, Iowa, providing the broken parts first be sent to the manufacturer f. o. b. Charles City, Iowa, for inspection and there found defective. This shall be the exclusive remedy in case of breach of the warranty that the tractor is well made of good material and workmanship.

"Purchaser agrees that retention or possession for more than six days after first day's use of said machinery purchased herein, shall be construed as conclusive evidence that the warranty has been fulfilled and that the manufacturer is hereby released from all further warranty, except as to defective parts."

The case came on regularly for trial, and after impaneling a jury

the defendant, through his attorney, made a statement of what he expected to prove. The statement is substantially as follows:

The evidence will show that the defendant bought a certain one-way plow from a Mr. Shull and was interested in the purchase of a tractor with sufficient capacity and power to operate the plow when plowing at a depth of six inches; that Mr. Shull was the agent of the plaintiff and told him that an 18 x 36-horsepower standard Hart-Parr tractor would develop sufficient power to successfully operate the plow and that the defendant, on the 15th of July, 1928, ordered the tractor in question, which was delivered to the defendant, in response to the order, the latter part of July, 1928; that he attempted to use the tractor in pulling a combine and found that it would not pull it when they came to weedy wheat. He also tried it on the plow, and it would not pull the plow. He made tests of the tractor on other farm implements and found that it would not develop sufficient power. He notified the agent and thereafter representatives from the company came and examined the tractor. They concluded that the trouble was in the magneto, and replaced the magneto with a new one. This did not relieve the trouble. Tests were made with smaller plows which·were pulled by engines with less capacity and less horsepower, but the engine did not pull them. Other representatives of the company came and worked on the engine, but were unable to get any satisfactory results. "The evidence will show this tractor never did work; it would go a little ways and then stop, and that always it was working under a strain with the governors flat down so there was no reserve power at any time. . . . They came back to Scott City and they met over here in one of the local garages, these two gentlemen from the factory and Mr. Rich. They were talking there back and forth and these men didn't think it was possible and were inclined to dispute the fact this Wallis tractor up there was pulling this plow in similar ground. There was some discussion there and a proposition was made to this effect: that they would go up there the next Monday and they would get Mr. Cook to take his Wallis tractor over there and hook on this plow at the same place the Hart-Parr had left it under precise conditions, and that if the Wallis tractor would pull the plow at that time and place in that ground they agreed they would do one of two things: they would take back this old tractor and give Mr. Rich his notes or they would furnish him a brand new tractor. Several witnesses heard this conversation and will testify to what was said. Monday morning they went to

Mr. Cook's place, and the evidence will show that the Hart-Parr men went over to Mr. Cook and made the request of him that he bring his Wallis tractor over and hook it on that plow to see if it would pull it, so Mr. Cook did that; he hooked his tractor on the plow and walked off with it in high gear. The ground was hard and it was under conditions that were really worse than they had been before; the evidence will show that they pulled that plow with a smaller tractor in high gear; once he went down in a lower gear for just a second and back, and pulled until they were satisfied it was doing the work; they admitted this smaller tractor had pulled this plow in a satisfactory manner, and then after having made this proposition they failed to keep it. . . . If we show what I have stated here is true by good, substantial, credible testimony and that this tractor was no account—we will show you in the discussion of the tractor this is designated 18-36 horsepower; that means a tractor that will develop 18 horsepower on the drawbar and 36 horsepower on the belt, and it was so described in the order, and that was the kind of a tractor that Mr. Rich intended to buy for his use on his farm plowing sod and old ground, and that after more than a year's efforts expended on that thing to make it a useful tractor, something that would make it operate like it was designed to, all efforts failed and it was no account and it was worthless so that the consideration for which Mr. Rich gave his note failed, and if it did, then he is not in law obliged to pay his note. That is the nature of the evidence we will introduce here."

After the statement of counsel the plaintiff moved for a judgment on the pleadings and the opening statement, which was by the court sustained, and judgment rendered accordingly.

The plaintiff, in the court below, contended that the defendant was precluded from the defense of the failure of consideration by the terms of the written warranty made a part of the contract or order for the machine. On the other hand, the defendant contended that the express warranty contained in the order did not preclude the existence of either an express or an implied obligation on the part of the manufacturer to deliver a tractor reasonably fit for that which it was designed and made.

The appellee urges that the decisions of this court in *Ehrsam v. Brown,* 76 Kan. 206, 91 Pac. 179; *Lumber Co. v. Kelley,* 117 Kan. 285, 231 Pac. 71; *Illinois Zinc Co. v. Semple,* 123 Kan. 368, 255 Pac. 78, are controlling in this case and that they support the contention of the appellee and fully warranted the court in sustaining its mo-

tion. A careful reading of the decisions cited, together with the citations therein contained, lead to the conclusion that these decisions establish the rule that where a known, described and specific article is sold there is no implied warranty that it will answer the purpose intended by the buyer, although such purpose is communicated to the dealer, and that an express warranty excludes an implied warranty relating to the same subject matter. Without question this is the law of this state—but is it applicable and controlling in the case under consideration? It will be noted that the tractor was purchased on a written order sent direct to the manufacturer and is described "18 x 36 h. p. Standard," which means a tractor developing eighteen horsepower on the drawbar and thirty-six horsepower on the belt. In other words, the order called for a tractor which would develop eighteen horsepower on the drawbar and thirty-six horsepower on the belt. The express warranty contained in the order is that it is "well made, of good materials and workmanship."

In the case of *Ehrsam v. Brown,* supra, the court, after quoting from the case of *Smith v. McNair,* 19 Kan. 330, 27 Am. Rep. 117, said:

"It will be readily seen that the case does not decide that there is an implied warranty on the part of the dealer that the thing sold will answer the purpose intended by the buyer, but that the implied warranty is that the thing called for by the contract of purchase shall be delivered." (p. 216.)

This court also said in *Thresher Co. v. Nelson,* 105 Kan. 517, 519:

"It was sold by description, and the description was written in the contract. It was not alleged that the machine did not conform to the description in any particular."

In the case of *Tank Co. v. Oil Co.,* 108 Kan. 690, 196 Pac. 1111, this court said:

"A tank company which, under contract with an oil company, furnishes material and labor and constructs a 1,600-barrel tank for the storage of oil on the oil company's premises, impliedly warrants that the tank shall be reasonably fit for the purpose for which it was sold." (Syl. ¶ 1.)

In the case of *Checkrower Co. v. Bradley & Co.,* 105 Ia. 537, the plaintiff sued to recover the purchase price of a number of corn cutters. The express warranty was that the machines were "well made and finished." The court said:

"If it should be said that this is not a warranty that the cutters were fit for the purpose for which they were intended, we think that such a warranty must be implied." (p. 546.)

In the case of *Fairbanks, Morse & Co. v. Miller,* 80 Okla. 265, the

defendant ordered a 30-60-horsepower tractor, which order warranted that the engine "shall be made of good material and in a workmanlike manner." The court held:

"An express warranty in a contract of sale usually excludes an implied warranty; but, in the sale of machinery under a written contract of sale, in addition to the express warranty contained in the written contract, there is an implied warranty that such machine or article shall correspond with the description contained in the written contract of sale, and that the same is suitable to perform the ordinary work for which the described article is made or manufactured; and such an implied warranty does not contradict nor conflict with the express warranty." (Syl. ¶ 8.)

There is an exhaustive brief on this question in 59 A. L. R. 1180.

There is an obligation on the part of the seller of an article that the thing purchased will be delivered, and where an article is ordered from the manufacturer under a description which is well-known to the trade there is an implied warranty that the article possesses the qualities implied by the brand. The parties to this contract well understood the description of the thing purchased and the purpose for which it was intended; that is, that a tractor of the description ordered would develop eighteen horsepower on the drawbar. The tractor described in appellant's statement to the jury, which we must accept for the purpose of this case as true, did not develop eighteen horsepower. In fact it did not develop and sustain any power, consequently it did not meet the condition which the description necessarily implies. There is a clear distinction between a warranty that the article will answer the purpose intended by the buyer and an implied warranty that the article described is suitable to perform the ordinary work for which the described article is manufactured. There is a division of authority as to whether an express warranty of quality will exclude an implied warranty of fitness for the purpose for which the article is manufactured. We think the better rule is, which is supported by authority consistent with the decisions of this court, where the manufacturer sells a machine on a written order describing it, an express warranty of quality will not exclude an implied warranty that the machine will do the things which the description necessarily implies. There is nothing in the express warranty that excludes the obligation on the part of the appellee to deliver the engine described in the written order. It is a matter of common knowledge that an engine which will neither develop nor sustain power is of no value. The statement of counsel, if supported by evidence, is sufficient to support a verdict for the appellant.

The judgment is reversed.