No. 41,033

Nelva Fairbrother, *Appellee*, v. Wiley's, Inc., *Appellant*.

(331 P. 2d 330)

Opinion filed November 8, 1958.

*John F. Hayes,* of Hutchinson, argued the cause, and *Donald C. Martindell, William D. P. Carey, Wesley E. Brown, Edwin B. Brabets, Robert J. Gilliland, C. William Miller, Robert C. Martindell* and *Elwin F. Cabbage,* all of Hutchinson, were with him on the briefs for appellant.

*Abraham Weinlood,* of Hutchinson, argued the cause, and *Bill R. Cole, Kenneth F. Ehling, D. Stewart Oswalt* and *John H. Shaffer,* all of Hutchinson, were with him on the briefs for appellee.

The opinion of the court was delivered by

Schroeder, J.: This is a damage action brought for personal injuries resulting to the appellee (plaintiff) when plate glass windows from the front of appellant's department store fell to the sidewalk and broke during a gusty wind.

The primary question presented is whether an intervening force, high and gusty wind, precludes plaintiff from recovering on the

ground of negligence under the allegations of her petition and the evidence presented pursuant thereto. Appellant (defendant) asserts that the petition is drawn under the doctrine of *res ipsa loquitur*.

The plaintiff's petition contained two causes of action, only the first of which is presently before the court. (A demurrer was sustained as to the plaintiff's evidence on her second cause of action and no appeal has been taken from that ruling.) Hereafter reference to the petition will be confined to the first cause of action.

At the time of her injury Nelva Fairbrother, plaintiff, lived in Haven, Kansas. On the evening of April 2, 1956, the plaintiff with another lady arrived in Hutchinson, Kansas, about 6:30 p. m., and commenced their shopping. During the course of her shopping the plaintiff walked on the public sidewalk which abuts the defendant's place of business, known as Wiley's Department Store, on the corner of East First Street and Main Street in the City of Hutchinson, Kansas. The petition alleged that the sidewalk abutting Wiley's Store was heavily traveled by pedestrians during all retail business hours. It then specifically alleged the following which will serve to acquaint the reader with the facts in this case and to pinpoint the issue presented:

"II.

"In connection with its said business the defendant maintains along the Main Street side of its store and along the First Street side of its store, a series of large show windows with glass covering the store side of such windows at the building line. Also in connection with the operation of defendant's business, defendant maintains another row or series of windows corresponding in width and horizontal location with the show windows beneath, but of smaller vertical dimension and located a few inches above the lower show windows. All of the windows referred to are held in place by vertical and/or horizontal metal framework.

"III.

"Strong and gusty winds occur and are to be expected irregularly but frequently in and about Hutchinson, Kansas, and about the location of defendant's place of business, and are a condition of the weather in and about Hutchinson and defendant's place of business. Said winds are intensified at the location of defendant's place of business by reason of the size, location and construction of the building in which said business is carried on.

"*For a great many years various of the lower show windows and the windows immediately above the show windows have frequently broken and fallen out into the public street and sidewalk when such gusty winds have occurred, all because the materials, state of repair and construction of the windows has been of insufficient strength under the circumstances.* At all times the proba-

bility of such winds and the probability of the breaking and falling out into the public street and sidewalk of such windows, unless due care were exercised under the circumstances, have existed.

## "IV.

"The defendant, its officers, agents and employees have for many years had knowledge of all of the foregoing facts, and should have foreseen that such facts created danger to persons lawfully using the public street and sidewalk abutting defendant's place of business and that injury to such persons so using the public street and highway would probably occur unless the defendant, its officers, agents and employees took due care under the circumstances to inspect and maintain the windows hereinabove described in such manner as to prevent their breaking and falling out into the streets and sidewalks; but the defendants have failed to exercise due care under the circumstances in the inspection and maintaining of said windows.

## "V.

"All knowledge and information concerning the construction, inspection and maintenance of all of said windows, and all control of the construction, inspection and maintenance of said windows has at all times been in the exclusive possession of defendant, its officers, agents and employees, but none of such knowledge and no control of such matters is, or has been, in the possession of plaintiff.

## "VI.

"On Monday, April 2, 1956, most of the retail business establishments in the city of Hutchinson, Kansas, including the defendant store, remained open for regular business until 8:30 P. M. of said day. At about 7:15 P. M. of said day plaintiff was walking on the public sidewalk abutting defendant's store on Main Street, Hutchinson, Kansas. At that time a gusty wind, similar to those of common occurrence in the vicinity as described in the foregoing, blew through the business district of Hutchinson, Kansas, in the vicinity of defendant's store. At that time and for a long time previously, the defendant, its officers, agents and employees were, and had been, negligent in failing to properly construct, inspect and maintain the windows described in the foregoing. The particular acts and omissions of defendant, its officers, agents and employees constituting such negligence in the construction, inspection and maintenance of said windows is not known to plaintiff, and plaintiff had no control over such matters; but all such information and control was at all times material, and now is, in the possession of, or under defendant, its officers, agents and employees. At that time and place the glass and a part of the metal framework holding the glass in the south window on the Main Street side, in the higher row of windows, and also the glass in the large window immediately south of the west entrance to the store, became loosened, broken and detached from the building and fell to the sidewalk and upon the plaintiff causing her severe personal injuries as hereinafter more particularly described; and such occurrence was caused proximately by the aforesaid negligence of defendant, its officers, agents and employees in failing to so construct, inspect and maintain said window and windows as to prevent such occurrence and injury to

*plaintiff from happening under the circumstances;* and said occurrence and injury to plaintiff would not have happened in the absence of negligence on the part of defendant, its officers, agents and employees.

"VII.

"As a proximate result of the aforesaid negligence of defendant, its officers, agents and employees plaintiff's left leg was badly cut and her left achilles tendon was entirely severed. Plaintiff's left wrist was cut. . . ." (Emphasis added.)

Further allegations relate to plaintiff's injury and the damages suffered which are immaterial to this appeal.

The defendant among other things *specifically denied* "that it was guilty of any of the acts of negligence as alleged in the First Cause of Action" of the plaintiff's petition.

The plaintiff through counsel in her opening statement reasserted the allegations of her petition following which the appellant moved the court for judgment in favor of the defendant on the first count of plaintiff's petition for the reason that "the opening statement and the pleadings show the plaintiff's action is based on the theory of *res ipsa loquitur* and that under the statement of counsel the doctrine of *res ipsa loquitur* does not apply in this case because there is an outside intervening force shown."

The trial court overruled this motion and the case proceeded to trial before a jury. At the close of plaintiff's evidence the defendant demurred to the evidence of the plaintiff on the first count in her petition for the reason "that the evidence fails to establish a cause of action against the defendant, and for the further reason that the evidence of the plaintiff has shown an intervening proximate cause of the injury to plaintiff which eliminates the right of the plaintiff to recover on the doctrine of *res ipsa loquitur.*"

This demurrer was overruled by the trial court. The defendant did not rest upon the demurrer but proceeded to present its evidence following which and in due course the jury was discharged for the reason that it was unable to agree upon a verdict. Appellant has not seen fit to abstract its evidence and appellee has not supplied it in her counter abstract.

The appellant properly perfected its appeal from the foregoing adverse rulings specifying as error (1) the overruling of its motion for judgment on plaintiff's opening statement, and (2) the overruling of defendant's demurrer to the evidence of plaintiff in support of her first cause of action.

It should here be noted that the pleadings of the plaintiff were never attacked by a motion of the defendant. The attack was first made after the opening statement, not because of any substantial variance between the opening statement and the plaintiff's pleadings, but for the specific reason above quoted.

A motion for judgment on the opening statement will not be sustained unless in the making of such statement it appears the plaintiff has admitted facts which necessarily and absolutely preclude her recovery upon any of the issues made by the pleadings. (*Wilson v. Holm,* 164 Kan. 229, 188 P. 2d 899; *Rodgers v. Crum,* 168 Kan. 668, 215 P. 2d 190; and *Hengel v. Thompson,* 176 Kan. 632, 272 P. 2d 1058.)

The question to be answered, therefore, resolves into whether plaintiff has admitted facts which preclude her recovery. Inasmuch as the rule with respect to a demurrer to the evidence (*Hammargren v. Montgomery Ward & Co.,* 172 Kan. 484, 241 P. 2d 1192; *Haga v. Moss, Administrator,* 181 Kan. 171, 311 P. 2d 281; and *Binder v. Local Union No. 685,* 181 Kan. 799, 317 P. 2d 371) is somewhat similar to the rule governing the motion for judgment on the opening statement, the question which permeates the entire case is whether the intervention of high and gusty wind as a factor in this case—in (1) plaintiff's pleading, (2) her opening statement, and (3) her evidence—will absolve the defendant of negligence on the ground that plaintiff has shown a superseding cause which relieves defendant from liability.

The burden of appellant's argument throughout the case is that the appellee alleged, admitted and proved an intervening cause, the wind, which was the proximate cause of her injury. Appellant's first position is that appellee framed her first cause of action upon the theory of *res ipsa loquitur* and that such action cannot be maintained when it is shown that an outside intervening force caused the event which resulted in a claimed injury, citing *Stroud v. Sinclair Refining Co.,* 144 Kan. 74, 58 P. 2d 77. We need not here be concerned with the Stroud case or any distinctions which may or may not be drawn for the reasons hereafter stated. In our opinion the allegations of the first cause of action in the plaintiff's petition are adequate, when liberally construed, to state a cause of action on the theory of ordinary negligence. True, some of the language contained therein may lead to the impression that the pleading was framed on the doctrine of *res ipsa loquitur,* but it is apparent that

the appellant in its answer did not even regard the petition as alleging a cause of action on the theory of *res ipsa loquitur* since it *specifically denied* the "acts of negligence as alleged" in the plaintiff's first cause of action. Those portions of plaintiff's petition from which it is indicated that specific acts of negligence are pleaded have been italicized.

The petition was specific in describing the windows which became loosened, broken and detached from the building and fell to the sidewalk and upon the plaintiff causing her injuries. The petition alleged that the defendant failed to exercise due care under the circumstances—in failing to so construct, inspect and maintain the windows as to prevent such occurrence and injury to the plaintiff from happening under the circumstances. Construed with other allegations the plaintiff specifically alleged that the defendant failed to exercise due care in that:

(*a*) The defendant failed to properly construct the windows which the defendant knew to be of insufficient strength to withstand winds which frequently occurred;

(*b*) The defendant failed to properly inspect the windows which the defendant knew to be of insufficient strength to withstand winds which frequently occurred; and

(*c*) The defendant failed to properly maintain the windows which the defendant knew to be of insufficient strength to withstand winds which frequently occurred.

Plaintiff's further allegations that "All knowledge and information concerning the construction, inspection and maintenance of all of said windows, and all control of the construction, inspection and maintenance of said windows has at all times been in the exclusive possession of defendant," and that "The particular acts and omissions of defendant . . . constituting such negligence in the construction, inspection and maintenance of said windows is not known to plaintiff," were frank disclosures why plaintiff could not be more definite and certain. Specific acts were already alleged with as much certainty as was available to the plaintiff. Having alleged a cause of action upon the theory of ordinary negligence, we need not treat appellant's contention that a special rule is applicable to *res ipsa loquitur* cases where there is an intervening cause.

The plaintiff's evidence was consistent with the allegations of her petition. As viewed on demurrer the testimony of the defendant's officers, P. V. Wiley and Robert E. Wiley, called as witnesses for the plaintiff, disclosed that the windows were of insufficient strength

because they had frequently broken out and had fallen to the sidewalk over the years as a result of the wind—all without any change whatever in the construction or installation of the windows over a period of at least 25 years.

The following is testimony of P. V. Wiley:

"Q. To your knowledge how long was that same type of glass, thickness of glass, in those windows used?

"A. I think the same type of glass has always been used on those windows.

"Q. That's at least as far back as you have been connected with the business?

"A. That's right.

"Q. So in 1955, then, some of these same type of windows have gone out due to wind. Same kind of windows?

"A. That is correct.

"Q. Do you have among the pieces of equipment used in connection with your display windows a type of padded brace?

"A. We do.

"Q. And what is the purpose of that padded brace?

"A. To protect the windows during wind.

"Q. Those are kept available for all of the display windows?

"A. Right."

Robert E. Wiley testified:

"Q. Would you say that on the basis of your experience, that such damage or breaking out of windows, to your knowledge, occurs as often as once every two or three years on an average? I am not speaking of an exact point of time, but an average.

"A. I would say probably that that might be fairly close to it. That's a little hard to say.

"Q. Let me ask you this, Mr. Wiley, whenever you have knowledge of a high wind is there some concern among the officials and employees of the store about the windows at any time there is a high wind in the area?

"A. If it is an extremely strong wind, what you would call a higher than average wind, yes.

"Q. You do have concern about the fear that some windows might go out?

"A. The possibility is always there, of course.

"Q. Are you also familiar with the braces that are available and ready?

"A. Yes, sir.

"Q. Under what circumstances are they put into position, usually?

"A. At the discretion of our display manager, I believe, whenever he feels that the windows might develop an undue vibration.

"Q. And the purpose of that is to protect against the effects of wind?

"A. Yes."

The second position taken by the appellant is that the gusty wind which caused the windows to become loosened and fall to the sidewalk was an "Act of God" or *"vis major."*

It must be conceded that an occurrence rising to the dignity of an "Act of God" or *"vis major"* will shield a defendant from liability. One is not required to anticipate such phenomena, since their effects cannot be prevented by any reasonable means, but not every violence of nature rises to such dignity. In *Garrett v. Beers,* 97 Kan. 255, 155 Pac. 2, it is stated in syllabus ¶ 2:

"An 'act of God' as known in the law is an irresistible superhuman cause, such as no reasonable human foresight, prudence, diligence and care can anticipate and prevent."

In the Garrett case this court held that a flood caused by a heavy and protracted rain no greater than had fallen "many a time before" within the duration of a man's experience is not such an "Act of God" as will excuse one who changes the natural course of a stream into a new channel which is inadequate to carry off its waters without damage to neighboring property.

The law books are full of cases where human negligence and some force of nature have concurred to produce an accident and injury, and where the contributing factor of the natural force, such as lightning, wind, or the like, has been held to be no excuse for the concurrent human negligence. (*Lewis v. Street Railway Co.,* 101 Kan. 673, 168 Pac. 856.)

In *Kansas City v. King,* 65 Kan. 64, 68 Pac. 1093, the flood of 1892 was unusual but such as had occasionally occurred and which the city should have anticipated and provided against. In *McKinley v. Railway Co.,* 113 Kan. 550, 215 Pac. 301, a severe blizzard was not unprecedented so that it could be found, in effect, that reasonable foresight, prudence, diligence and care could have anticipated it and prevented its effects. In *Richards v. Kansas Electric Power Co.,* 126 Kan. 521, 268 Pac. 847, a stroke of lightning caused damage by killing a man because defendant failed to install sufficient ground wires and the negligence was not excused. In *Meecke v. Morguies,* 128 Kan. 423, 278 Pac. 45, a skylight improperly repaired and fastened was blown in by the wind and the court held the wind was not sufficient to excuse plaintiff for his negligence. (See, also, Restatement of Law, Torts, Negligence, § 302, p. 814.)

It may be generally stated that the defendant is not relieved of liability for negligence on the excuse that the "proximate cause" was some "Act of God," such as gusty wind in the instant case, where the so-called "Act of God" would not have wrought the injury but for the human negligence which contributed thereto. The case of *Berry v. Shell Petroleum Co.,* 141 Kan. 6, 40 P. 2d 359,

quotes Harper on Torts (sec. 119, p. 270), on the subject of legal consequences of misconduct as follows:

" 'The rule may be generalized, that where harmful consequences are brought about by intervening and independent forces the operation of which might have been reasonably foreseen, there will be no break in the chain of causation of such a character as to relieve the actor from liability. The source of the intervening agency is immaterial, whether from nature, animate or inanimate, or from human beings.' " (p. 7.)

A recent decision of this court dealing with the subject of an independent and efficient intervening cause in negligence actions is *Steele v. Rapp*, 183 Kan. 371, 327 P. 2d 1053. There a divided court held that the intervention of a negligent act by a third person was foreseeable and the original actor was not relieved of liability. There many of the decisions of this court were reviewed. Here, however, we are dealing with a force of nature as distinguished from the negligent act of a third person.

We have no difficulty in concluding that a natural phenomena, such as the gusty wind involved in this case, is not a superseding cause which relieves the defendant of liability where the allegations are sufficient and there is evidence which, if believed by a jury, would indicate that the defendant should have anticipated the occurrence of strong and gusty winds and foreseen that its failure to exercise reasonable prudence, diligence and care in the construction, choice of materials and maintenance of its windows commensurate with the reasonably foreseeable effects of such wind would probably cause injury to pedestrians lawfully using the abutting sidewalk.

The pleadings and the opening statement made allegations in accordance with the foregoing and the evidence tending to support them was strong.

The rulings of the trial court are affirmed.