No. 45,451

WILLIAM BEREMAN, *Appellant*, v. FRANK BURDOLSKI, d/b/a Burdolski Motor Service, *Appellee*.

MINNIE BEREMAN, Administratrix of the Estate of Carl Stone, Deceased, *Appellant*, v. FRANK BURDOLSKI, d/b/a Burdolski Motor Service, *Appellee*.

(460 P. 2d 567)

Opinion filed November 8, 1969.

*John E. Shamberg,* of Kansas City, argued the cause, and *Charles S. Schnider* and *Jacob F. May, Jr.,* both of Kansas City, and *Thomas J. Conway* and *Edgar S. Carroll,* both of Kansas City, Mo., were with him on the brief for the appellants.

*Bill E. Fabian,* of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: These are consolidated actions for damages for personal injuries sustained in a one car collision. Breach of implied warranty in repair work performed by defendant on the vehicle's brakes was the basis for the suits.

Trial was to a jury. Judgment was entered upon a verdict in favor of defendant, from which plaintiffs have appealed.

The questions upon appeal primarily concern propriety of instructions to the jury.

Plaintiff William Bereman filed his petition in which he alleged that during the year 1962 defendant was operating an automobile repair service and garage located at 4610 State Avenue, Kansas City, Kansas; that on May 23, 1962, his wife Minnie Bereman took their 1958 Pontiac automobile to defendant's place of business with in-

structions to examine and make repairs to the brake system; that defendant undertook to make such repairs and warranted he had done so and such vehicle would be suitable and safe for operation; that on May 26, 1962, while plaintiff was operating the vehicle in Kansas City, Missouri, the brakes failed to function properly with the result he veered into a light pole and sustained personal injuries. Plaintiff alleged breach of implied warranty by defendant causing the collision and his injuries. Plaintiff Carl Stone made similar allegations in his petition, stating he was a passenger in the automobile at the time of the collision and sustained personal injuries. Stone died prior to trial and his sister, Minnie Bereman, was appointed administratrix of his estate and substituted as plaintiff in the action filed by him.

Defendant's amended answer consisted of a general denial and an allegation of contributory negligence and assumption of risk on the part of plaintiff William Bereman and of Stone.

The actions were consolidated and tried together.

The questions raised upon appeal necessitate brief review of certain evidence at trial. Bereman had purchased a 1958 Pontiac automobile in 1961. Shortly prior to May 16, 1962, he had personally done some work on the bearings of one or both front wheels; on May 16, 1962, his wife took the automobile to appellee's neighborhood garage for repair work. At this time the car had some 90,000 miles on it. The testimony was controverted as to the exact nature of the work requested but in any event appellee repaired a leak in the master cylinder of the brakes on that date. Thereafter Mrs. Bereman continued to drive the car although the brakes felt soft and spongy. On May 23, 1962, while proceeding through an intersection she applied the brakes and found they were not working. As she was near appellee's garage she drove the car there for further repairs. Again the evidence was conflicting as to the conversation and the repairs requested. Appellee made some brake and wheel bearing repairs to the right front wheel that day for which he was paid by Mrs. Bereman upon his assurance the brakes were all right. Mrs. Bereman drove the car for two more days prior to the collision. The brakes still had a spongy feeling but she had no trouble with the car pulling to the right. Mr. Bereman drove the car on Saturday morning, May 26, 1962.

On Saturday afternoon, May 26, Mr. Bereman, accompanied by Mrs. Bereman, Mr. Stone and a granddaughter, was driving the

vehicle eastward on Forty-Seventh Street in Kansas City, Missouri. When he reached Paseo Boulevard he was in the lane nearest the center. He applied the brakes and they grabbed so that the car verred about one foot to the right. While stopped at a traffic light Mr. Bereman determined the brakes were working improperly and that they should turn around and go back to appellee's garage and he so stated to his passengers. He continued eastward on Forty-Seventh Street which becomes Swope Parkway east of Paseo. He went several blocks, passing two service stations of which he was aware. As he proceeded east on Swope Parkway, a four-lane roadway, he started to pull into the right lane of traffic and upon observing cars ahead of him which had stopped for a light, he applied the brakes. The car swerved to the right and with considerable impact struck a utility pole on the right side of the street, causing injury to both Mr. Bereman and Mr. Stone. The vehicle made a twenty-five foot skid mark commencing in the center lane and veering toward the right. Speed of the vehicle was estimated by the Beremans to be from twenty-five to thirty miles per hour; one eye-witness testified on appellee's behalf that the car "appeared to be traveling at an excessive rate of speed".

We may say in passing appellants presented a strong prima facie case of unworkmanlike performance on the part of appellee in the repair work. If credited by the jury, it was to the effect he had installed on the right front wheel new brake shoes of a different type from the worn brake shoes in the opposite or left front wheel, contrary to proper practice in such a situation, and resulting in uneven braking application. In appellee's behalf is should be stated much of appellants' evidence, including the nature and effect of the repairs, was controverted and he also produced evidence the veering was caused by grease in the left front wheel, such grease not having been there when the vehicle left his hands. However, we are concerned only with the character of the evidence as it relates to the particular questions upon appeal.

The principal complaint centers about the giving of an instruction to the effect that if the driver of the vehicle and his passenger were aware of the alleged defect in the vehicle, or should have been aware of it, and continued thereafter to use the vehicle, then they could not recover.

Appellants first contend the instruction was so worded that it placed a duty upon them to hunt out and discover any defect in the

repair work. We think this is a strained and not a fair construction of the instruction. The duties were couched only in terms of a general standard of ordinary care under the circumstances and placed no burden upon appellants beyond that. The instruction referred to the duty to exercise care as to obvious defects which were known, and here, concededly, the defect complained of was known. Appellants were not prejudiced in the respect complained of.

A more serious question is appellants' contention that contributory negligence is not a defense to an action for breach of implied warranty.

We should point out that the instructions did not use either of the phrases contributory negligence or assumption of risk, which were pled in appellee's amended answer. The instructions recited a general duty to use ordinary care and prudence for one's own safety and protection and they specifically referred to continued use of the defective vehicle after Bereman and Stone knew of the defect, without a label descriptive of that defense. Along with many courts we have generally adhered to the view contributory negligence and assumption of risk are separate defenses but confusion has sometimes resulted from efforts made to distinguish them in all cases. We shall not attempt further refinement here—instead we shall try to avoid semantic problems. Several courts have now abandoned use of the phases contributory negligence and assumption of risk in implied warranty cases and, instead, approach the problems of a defense of that character in terms of causation (see anno. 4 ALR 3d 501, 504-505). Appellants treat the issue as one of contributory negligence, saying the trial court should not have permitted evidence of contributory negligence to be injected into an implied warranty suit in the first place and should not have instructed the jury upon that issue. We will treat these two questions together, as have the parties.

An excellent annotation on the subject "Contributory negligence or assumption of risk as defense to action for personal injury, death, or property damage resulting from alleged breach of implied warranty" appears at 4 ALR 3d 501, where it is stated the cases are in disagreement, some jurisdictions holding that contributory negligence is available as a defense to breach of implied warranty, others that it is not. The annotator concludes there are cases lending support to both views in Kansas (p. 504).

Our first case to be noticed is *Challis v. Hartloff*, 136 Kan. 823, 18 P. 2d 199, a breach of implied warranty action against a broker and a retail dealer. Plaintiff in his petition alleged the broker sold flour to the retail dealer who in turn sold a sack to plaintiff for human consumption and that it contained arsenic, and plaintiff was made ill by eating food prepared from the flour. Defendants filed their answers to this petition alleging numerous defenses including contributory negligence. The trial court overruled plaintiff's demurrer to this answer from which order defendants appealed to this court. In partially reversing the trial court's ruling this court held that contributory negligence is not a defense to an action for breach of implied warranty (Syl. [5]). The whole discussion of the subject in the opinion is the following:

"As to the defenses of contributory negligence and those negativing any possible carelessness [on the part of defendants] they are only proper defenses to the allegation of negligence.

" 'The doctrine of contributory negligence rests in the law of tort as applied to negligence, and is governed by the principles peculiarly applicable to that branch of jurisprudence.' (45 C. J. 941.)" (p. 828.)

The opinion does not disclose the particular facts, if any, which may have been alleged in the answer as constituting contributory negligence. Records of the case filed in the court archives do not contain the allegations of the answer, so we are unable to ascertain what they consisted of factually. The opinion does stress the rule that negligence of a manufacturer is not an issue in an action for breach of implied warranty. Apparently the court reasoned that inasmuch as negligence of the defendant is not an issue in a breach of warranty action, contributory negligence should not be a defense.

In *Simmons v. Wichita Coca-Cola Bottling Co.*, 181 Kan. 35, 309 P. 2d 633, the opinion merely repeated the foregoing holding, stating:

"We held in *Challis v. Hartloff*, 136 Kan. 823, 18 P. 2d 199, that neither allegations of contributory negligence nor those negativing any possible carelessness on the part of defendants are an answer or defense to an action to recover on a breach of an implied warranty." (p. 38.)

However, in *Simmons* the question before the court was whether negligence of a manufacturer or bottler was an issue in an action for damages for breach of implied warranty. The question of contributory negligence on the part of one using a defective product was not in the case in any way.

In *Frier v. Proctor & Gamble Distributing Co.*, 173 Kan. 733, 252 P. 2d 850, the action was one for damages against a manufacturer and a distributor for breach of warranty. Plaintiff alleged she used a certain brand of soap flakes in washing dishes and as a result sustained injuries to her hands. Defendants in their answer alleged contributory negligence and further alleged that plaintiff knew, or by the exercise of reasonable care could and should have known of any danger to which she was exposed, notwithstanding which she continued to work and she assumed the risk of being injured. At the conclusion of plaintiff's evidence the court sustained defendants' motion for judgment and plaintiff appealed. In affirming the judgment this court gave weight to the fact plaintiff had continued to use the allegedly offensive flakes for several weeks, perhaps for more than three months, although she was receiving treatment from doctors and getting salve or ointment for hands from a drugstore.

The holding in *Frier* was discussed and amplified soon thereafter in *Graham v. Bottenfield's Inc.*, 176 Kan. 68, 269 P. 2d 413:

"Resort to that opinion [*Frier*] discloses there was no claim the petition failed to state a cause of action, that the cause proceeded to trial, and that at the close of plaintiff's evidence the court took the case away from the jury, after a demurrer had been lodged against the plaintiff's evidence, and rendered judgment for the defendant principally, if not entirely, upon the premise that under the conditions and circumstances there involved the plaintiff's continued use of the product made her guilty of contributory negligence which precluded her recovery as a matter of law." (pp. 70-71.)

We must agree with the annotator's conclusion our cases are not in harmony.

Both parties here cite and rely on different parts of a particular section in 2 Frumer-Friedman, Products Liability, to support their position. The whole problem may perhaps best be clarified by quoting the entire section (16.01 [3]), which is as follows:

"While it is clear that plaintiff need not prove negligence in a warranty-products liability case, it is not as clear whether contributory negligence as such is a defense to such an action. While there is authority to the contrary, it is arguably the better view that contributory negligence as such, as distinguished from misuse of the product, is not a defense. Depending upon the facts, the distinction between contributory negligence and misuse of the product may be nothing more than a matter of semantics. In other words, some courts have talked of contributory negligence as a defense in warranty when they could have said instead that there was misuse or voluntary and unnecessary exposure to risk with knowledge of the danger, which generally is a defense to strict liability.

"*Bahlman v. Hudson Motor Car Co.* is probably the leading case holding that contributory negligence is not a defense to a warranty action. In *Bahlman*, defendant-car manufacturer expressly warranted that a car roof had no seams and consequently no jagged edges. Plaintiff's negligent driving caused the car to overturn and his head was cut by the jagged edges of the seam. The *Bahlman* court, in addition to stating that there was 'no reason nor authority' for introducing the defense of contributory negligence into an action for breach of warranty, also reasoned:

" 'Under such rule, although a manufacturer had falsely advertised that a windshield was made of shatterproof glass, as in the now famous case of Baxter v. Ford Motor Co., . . ., he would be allowed to escape the consequences of that deliberate misrepresentation because the plaintiff was exceeding the speed limit when a pebble flew up and shattered the glass. . . . It is undoubtedly true that [in the instant case] the negligence of the driver caused the car to overturn, but defendant's representations were not for the purpose of avoiding an accident, but in order to avoid or lessen the serious damages that might result therefrom. . . . The particular construction of the roof of defendant's car was represented as protection against the consequences of just such careless driving as actually took place. Once the anticipated overturning of the car did occur, it would be illogical to excuse defendant from responsibility for these very consequences.'

"The court, it would seem, was actually saying in this case that contributory negligence is not a defense where the injury directly results from an unknown defect warranted against.

"As stated in *Hansen v. Firestone Tire and Rubber Co.*, a recent Sixth Circuit case following *Bahlman:*

" 'If the manufacturer chooses to extend the scope of his liability by certifying certain qualities as existent, the negligent acts of the buyer, bringing about the revelation that the qualities do not exist, would not defeat recovery.'

"The distinction, with respect to defense to breach of warranty, between contributory negligence in the sense of failure to exercise due care to discover a defect and contributory negligence, in the sense that there is unreasonable exposure to a known risk, was stated by the Illinois court in a products liability case years ago as follows:

" 'A party may not recklessly use a defective instrument with full knowledge of its dangerous condition, . . . If the defect were not apparent, or even if it were discoverable by an inspection, but was not discovered through the negligent failure to inspect, an entirely different question would be presented. . . . Here is a known dangerous condition, . . .'

"Most of the cases probably can be reconciled on this basis, that the courts which say that contributory negligence is a defense have in mind the situation where there is actual knowledge of the risk. Of course, it must be kept in mind that the courts sometimes speak of contributory negligence when, on the facts,

they are actually saying that the plantiff's injuries were caused *solely* by his own negligence. The court may also use contributory negligence language in a situation where actually there was no breach of warranty.

"The distinction made in the preceding paragraph with respect to types of contributory negligence does not, however, square with cases under the Uniform Sales Act which deny recovery for failure to inspect or to adequately inspect, where such inspection would have revealed the defect. Under the Uniform Commercial Code, 'if the buyer discovers the defect and uses the goods anyway, or if he unreasonably fails to examine the goods before he uses them, resulting injuries may be found to result from his own action rather than proximately from a breach of warranty.'

"What rules should apply in a warranty action, especially where the injured person is a non-commercial consumer? Unreasonable exposure to a known and appreciated risk should bar recovery, just as presently held and just as it bars recovery in negligence. In the case of an *express* warranty, contributory negligence should clearly not be a defense, where the injury results from an unknown defeat warranted against, and the contributory negligence is just that and not the equivalent of unreasonable exposure to a known and appreciated risk. Turning to implied warranty, it is unreasonable to require the non-commercial consumer to make any sort of detailed or expert inspection. However, with this in mind but accepting the view that products liability in warranty is basically liability in tort, contributory negligence should be a defense to breach of implied warranty just as in the negligence cases. Otherwise, we impose the same strict liability for products as presently exists, for example, with respect to wild animals and other ultrahazardous activities. It is one thing to say that there is strict liability in the sense that proof of negligence should not be required; it is quite another to say that contributory negligence (with duty of inspection limited as suggested above) should not be a defense. This, in substance, is what the cases actually may be saying.

"Contributory negligence as a defense to strict liability in tort is discussed in § 16A [5] [f] *infra*. As there discussed, the Restatement of Torts Second § 402A, in adopting the rule of strict liability in tort, makes a distinction similar to that made above. Contributory negligence in the sense of a failure to discover a defect, or to guard against the possibility of its existence, is not a defense. Contributory negligence in the sense of an unreasonable use of a product after discovery of the defect and the danger is a defense."

In Restatement of Torts, Second, § 402A, Comment *n.*, we find this:

"Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict

liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." (p. 356.)

We have always recognized that in a products liability case based upon negligence, contributory negligence is a defense (see discussion and cases cited at PIK 13.06, p. 381). It is difficult to see why a different standard of care should be applicable to the user in a products liability case based upon breach of implied warranty. In either instance the basis of the user's recovery is the release of a defective or harmful product (*Jacobson v. Ford Motor Co.*, 199 Kan. 64, 67, 427 P. 2d 621). If that product be unreasonably used with knowledge of its harmful condition, why should that defense be denied when breach of implied warranty is relied upon but allowed when actual negligence is the basis for recovery? No reason suggests itself.

In *Frier* this court recognized that continued use of a product after knowledge of its danger may constitute a defense to an alleged warrantor. This principle appears to be logical and just, irrespective of the particular label attached to such a defense. A plaintiff first of all relies on the warranty of fitness in using the product. When he is injured, he must establish that the alleged breach of warranty was the proximate cause of his damage. He cannot recover in the absence of such a showing. If a plaintiff proceeds in the use of a product in disregard of a known danger it cannot be said he relied on the implied warranty of fitness, and its breach is not the proximate cause of the injury.

We think the *Frier* rule as elaborated in *Graham* is more in accord with reason and justice than the earlier broad general statement found in *Challis*. Accordingly, the *Challis* statement, viewed as a rule of unlimited applicatilon to all cases of implied warranty, is disapproved. As applicable to the facts of this case, we hold that an unreasonable use of a product after discovery of a defect and becoming aware of the danger is a defense to an action for breach of implied warranty of fitness. This principle was fairly embodied in the trial court's rulings on admission of evidence and in the instructions complained of.

We might point out appellants have raised only the issue of the propriety of such a defense as an abstract matter of law; they have

not challenged sufficiency of the evidence to make determination of that issue a question of fact for a jury.

Appellants also complain they were not permitted by the trial court to have a directed verdict on the liability issue by reason of that which obviously was an inadvertent admission in appellee's pleading. Being raised as it was for the first time after three pretrial conferences held to define the issues and after introduction of all the evidence at trial, the contention is so hypercritical and devoid of merit that further discussion is not warranted.

The judgment is affirmed.

APPROVED BY THE COURT.