No. 21,241.

EMMA MAE TOWNSEND, *Appellee*, v. C. A. SEEFELD, *Appellant*.

SYLLABUS BY THE COURT.

1. MALICIOUS ASSAULT—*Damages—Instructions.* The instructions given, none being requested by the defendant, sufficiently covered the issues between the parties and fairly stated the law.

2. SAME—*Evidence—Findings—"Smart Money."* The findings, in accordance with the evidence of the plaintiff, convicted the defendant of such malicious and oppressive conduct as justly to render him liable to the imposition of smart money.

3. SAME—*Actual Damages—Mental and Physical Suffering.* The allowance of actual damages was properly based on physical and mental suffering caused by the defendant's conduct, and not alone on nervous shock.

4. SAME—*Injuries Result of Assault.* While the plaintiff received from the defendant no wound or bruise, the result of his conduct was a miscarriage accompanied with very severe pain. *Held,* that such result cannot be classed as mental suffering.

5. SAME—*Financial Condition of Defendant—Proper Subject of Inquiry.* It was proper to inquire into the financial condition of the defendant to the end that the finding as to punitive damages might be intelligently made.

Appeal from Rooks district court; CHARLES I. SPARKS, judge. Opinion filed January 12, 1918. Affirmed.

*David Ritchie,* of Salina, and *O. O. Osborne,* of Stockton, for the appellant.

*W. L. Sayers,* of Hill City, and *F. E. Young,* of Stockton, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendant, a constable, holding an execution against S. A. Townsend, undertook to levy it on an automobile which the plaintiff claimed and claims to own, and for the alleged forcible and malicious taking of which the plaintiff brought this action. She recovered and the defendant appeals.

The plaintiff testified in substance that the constable came to her husband's livery barn and said he was going to levy on the Ford automobile, and was told by plaintiff that it belonged to her and she did not want him to levy on it, that there was another automobile in the shed that he could levy on but that the Ford was the only thing "we have to make a living for the family."

"I saw the switch key to the car, and got it into my possession; after getting the switch key I had it in my hand; my hand in my apron pocket; I had on a big kitchen apron, and I just ran my hand in the pocket and rolled my hand up this way (indicating) in the apron, and stayed there; I think it was my left hand. Seefeld then asked me for the switch key, and I did not give it to him. After refusing to give it to him, he kept talking to me, and asking me for the switch key. He said, give me the switch key, and I said, No, I won't, and he looked awful and grabbed hold of me and . . . threw me down toward the ground, and my hands came out of the apron, and he grabbed the switch key."

On cross-examination she testified:

"I did not fall, did n't step forward, I did not move my feet. I was just scared. He did not throw me out of balance. Mr. Seefeld got the key, and I was standing there yet, and just as soon as he could get the switch and cranked the car he took it."

She testified that a miscarriage followed.

The jury returned a verdict for $500 actual and $300 exemplary damages, and made among others the following special findings:

"3. If you answer question two, yes, then did the defendant use any more force in taking possession of the automobile than was reasonably necessary to accomplish his purpose? Ans. Yes.

"4. If you answer question number three, yes, then state in what particular such force was excessive? Ans. In the violent manner in which he took the switch key.

"5. Did the defendant, C. A. Seefeld, in whatever he may have done, in the taking of the automobile in question, act in good faith, believing that he had a right to do what he did do? Ans. No."

Further, that the defendant had no reasonable ground for believing that the Ford was the property of the husband, that he was guilty of fraud, malice, gross negligence, or oppression by reason of not investigating the ownership of the car after being informed by the plaintiff that it belonged to a third party. Also that the $500 was allowed for severe nervous shock, great physical, and mental agony and for injured health, that the levy had not been made when the switch key was taken by the husband, and that the plaintiff suffered injury by the act of the defendant in forcibly wresting the switch key from her.

Assignments of error call attention to permitting the cross-examination of a witness, to certain instructions, to the matter of damages actual and exemplary, and to the denial of the motion for a new trial.

The first question presented in the brief is the failure of the court to instruct without request that the miscarriage alleged to have been suffered by the plaintiff was the proximate result of the defendant's conduct in taking the automobile, and it is complained that the court did not give any instructions whatever upon the material issues in the case or what was necessary for the plaintiff to prove before she was entitled to recover. An examination of the charge given, none being requested by the defendant, shows that the claims of the parties as set forth in their pleadings were stated to the jury, the duty of the defendant in making the levy, and that the jury were told that if they found from the evidence that he was acting under a valid execution but with malice, gross negligence, fraud, or oppression and without regard for the rights of the plaintiff they would be justified in awarding her exemplary damages if they should find her entitled to any actual damages. Detailed instructions were given touching the rights of the parties regarding the switch key, the authority of the constable under his execution, and even the validity of the judgment back of it, and the jury were charged that the burden was on the plaintiff to make out her case by a preponderance of the evidence. Indeed seven pages of the abstract are taken up with the thirteen instructions given, and it is not strange that with this prolixity no additional instructions were requested. Those given fully comply with the statutory

requirement to give general instructions upon each material issue. (See *Hamilton v. Railway Co.*, 95 Kan. 353, 357, 148 Pac. 648, and cases cited.)

The second complaint in the brief is that neither the evidence nor the findings sustain the allowance of $300 exemplary damages, although the jury found the defendant guilty of fraud, malice, or oppression in not investigating the ownership of the car after being informed that it belonged to a third party. The plaintiff testified that after the key was taken away from her she suffered some pain and felt deadly sick for a few minutes as if she were going to die, which feeling continued until she miscarried, and that the sufferings during this time were much greater than at natural childbirth, she having borne six children. The findings, as already indicated, are in no wise inconsistent with this evidence, but are supported thereby as to the physical and mental shock and suffering. (See *Whitsel v. Watts*, 98 Kan. 508, 159 Pac. 401, and cases cited.)

It is plausibly argued that as the jury limited the fraud, malice, and oppression to the failure to investigate the ownership of the car, this amounts to a repudiation of actual fraud, malice, or gross negligence, but under the familiar rule requiring the findings and evidence to be harmonized if reasonably possible, the view must be taken that the jury deemed the constable to have proceeded maliciously and oppressively to take the car from the plaintiff regardless of her claim of ownership and after being informed thereof, and this, including "the manner in which he took the switch key," was such conduct as merited punitive damages.

It is suggested that according to the testimony of one witness the constable had been informed that the license for the car was in the name of the husband, and that we should take judicial notice that this implied an application previously made by him to the proper officers for such license with the sworn statement to them that he was the owner of the car. But whatever application or affidavit may have been made by some other person, the plaintiff was on the ground claiming ownership and had possession of the key by which the car could be operated, and overruling and overcoming such claim and

20—102 Kan.

possession the constable, instead of calling upon his judgment creditor for indemnity, proceeded on his own responsibility to act in the way he did, with the disastrous results indicated by the evidence and evidently believed by the jury.

It is next contended that the allowance of $500 actual damages cannot be sustained, for the reason that severe nervous shock appears to be one of its elements, and that unless accompanied by physical injury such shock cannot be the basis of such recovery. While under some circumstances at least the rule contended for is enforced, the jury in this case properly concluded from the evidence that the physical and mental shock and suffering were both the result of the defendant's conduct. It is said to be absolutely clear from the record that there was no physical injury of any kind accompanying the so-called nervous shock by taking the switch key. It is true there was no wound or bruise on the body of the plaintiff caused thereby, but according to her testimony severe miscarriage pains immediately ensued, and it will not do to say that these were mental and not physical.

Lastly, complaint is made because the court received testimony on cross-examination of the defendant as to his financial worth. Counsel say that damages should not be figured upon the basis of what the defendant is worth, but upon the basis of what the plaintiff has been injured. But the theory on which smart money is allowed is that in addition to responding for actual damages the defendant, on account of the maliciousness of his conduct, ought to be punished. (8 R. C. L., p. 581, § 129.) It is entirely logical that in order to know what amount would really cause a smart to the defendant his financial condition should be somewhat understood, because what would be the merest annoyance to one might mean bankruptcy to another. Hence, it is the rule that in cases of this kind the financial standing of the defendant may be considered. (*White v. White*, 76 Kan. 82, 90 Pac. 1087; 8 R. C. L., p. 607, § 152.)

In view of the foregoing, no error is perceived in the ruling of the court denying a new trial.

The judgment is affirmed.