No. 45,825

CARL F. REED, *Appellee*, v. OWEN CHAFFIN, BILL CHAFFIN, GARY CHAFFIN, JIM WRIGHT and LARRY McCUE, *Appellants*.

(473 P. 2d 102)

Opinion filed July 17, 1970.

*Chas. Vance*, of Vance, Hobble, Neubauer, Nordling & Sharp, of Liberal, argued the cause, and was on the brief for appellants.

*Ronald A. Kaarbo*, of Liberal, argued the cause, and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: The plaintiff-appellee, Carl F. Reed, alleged in his petition three causes of action: The first was for an accounting and dissolution of the Carl F. Reed and Company, a partnership; the second was for wrongful ouster from the partnership and damages for loss of profits, and the third was for wrongful ouster from the management of the partnership, and damages for loss of salary.

The accounting and dissolution of the partnership has been completed and is not now in issue. The jury by special verdict found in favor of the plaintiff with respect to the second cause of action, and the plaintiff was awarded damages in the amount of $78,286. The jury's special verdict was unfavorable to plaintiff with respect to the third cause of action.

The plaintiff is a licensed pharmacist. Prior to October, 1966, he and defendant Jim Wright were partners and owned and operated a prescription center in Dodge City. Also, he and K. E. Paxton, Kiowa, Kansas, were partners and owned and operated the Garden Pharmacy in Garden City. In October, 1966, the above-mentioned partnerships were dissolved, and the plaintiff and the defendants entered into an oral agreement to form a partnership to operate prescription centers in the Gibson Discount Stores owned by the

defendants Chaffin, in Garden City, Dodge City, and Liberal, Kansas, and other locations where there were Gibson Discount Stores. The partnership was known as Carl F. Reed and Company, and was formed to conduct the business of prescription centers and was to continue for an indefinite time. It was agreed the plaintiff would act as general manager of the partnership. In May, 1967, Carl F. Reed and Company opened a prescription center in a Gibson Discount Store in El Dorado, Kansas. Through the efforts of the plaintiff, the partnership was financially successful and the four pharmacies owned by the partnership increased in volume of business and profits.

The plaintiff alleged that during the first part of March, 1968, the defendants wrongfully and forcefully ousted him from the partnership and refused to complete their oral contract. He alleged the partnership had inventory and capital assets in excess of $75,000, and that he would lose profits from the partnership by reason of his wrongful ouster in the amount of $200,000. He further alleged he was making a salary of $1,400 per month when he was wrongfully ousted as general manager and from the partnership, and sought damages for ouster as general manager, and for loss of salary.

The defendants' answer and cross petition alleged that while four prescription centers were in operation by the partnership, the plaintiff breached the partnership agreement by entering into competition with the partnership when he opened a prescription center in Emporia which other members of the partnership had voted not to establish. It was further alleged the plaintiff was negligent as general manager for failure to comply with pertinent regulations of the State Board of Pharmacy, which resulted in the closing of three prescription centers for approximately two weeks.

On January 28, 1968, prior to the opening of the Emporia center by the plaintiff, he notified the defendants that he could not employ a pharmacist to work in Emporia for the partnership, giving as a reason that pharmacists he approached either wanted a higher salary than the partnership was willing to pay, or did not want to work for an organization controlled by non-pharmacists. At the January 28 meeting, defendant, Owen Chaffin, told plaintiff if anyone opened a center at Emporia he would be let out of the partnership.

On February 27, 1968, after plaintiff and two other persons opened the Emporia Center, a partnership meeting was held and

it was voted to remove plaintiff as general manager. Later, and on March 26, 1968, all partners except plaintiff voted to dissolve the partnership. The district court appointed a receiver and all the assets were sold at book value to a corporation owned by the defendants and one Hatfield.

Based on the jury's special verdict, the district court entered judgment in favor of plaintiff in the amount of $78,286. A motion for a new trial was overruled, and the defendants perfected this appeal.

The defendants claim many errors occurring during the trial of the case. One contention is the district court erred in refusing to sustain their motion to set aside the findings and answers of the jury to special questions 1 and 2, because such answers were inconsistent with the answers to special questions 7 and 8.

The special questions and the jury's answers read:

"1. Was the oral partnership agreement between the plaintiff and the defendants breached or broken?
   Answer: Yes (X)   No ( )
2. If your answer to No. 1 is 'Yes', state who breached or broke it and in what manner.
   Answer: Defendants present at the Feb. 28, 1968, meeting. They fired the manager, Carl F. Reed, who was the manager in the oral agreement.
3. Did the oral partnership have a provision that it was to run for a length of time?
   Answer: Yes (X)   No ( )
4. If your answer to No. 3 is 'Yes', please state the length of time.
   Answer: 5 to 10 years.
5. If you find the defendants breached or broke the oral partnership contract, state what award of money you think should be awarded to the Plaintiff to properly compensate him for his damages.
   Answer: $78,636.00
6. If you find that the Plaintiff breached or broke the oral partnership contract, state what award of money you think should be awarded to the Defendants to properly compensate them for their damages.
   Answer: $ None
7. Was the plaintiff unlawfully ousted by the defendants from his employment as manager of the pharmacies operated by the partnership?
   Answer: Yes ( )   No (X)
8. If your answer to No. 7 is 'yes', please state the amount of money, you believe, should be awarded the plaintiff for loss of wages as manager.
   Answer: $ None
9. Do you find that the plaintiff is entitled to vacation pay upon his employment as manager being terminated?  If so, also state amount of vacation pay to which he is entitled?

Answer: Yes (X)  No ( )
$1,057.00

10. Did the plaintiff advise and disclose to the defendants all of the essential facts surrounding the Emporia store opening?
Answer: Yes (X)  No ( )

11. If the plaintiff did not disclose all the essential facts, in what particulars did the plaintiff fail to disclose the facts to the defendants?
Answer: Does not apply

12. Did the Defendants rely on the advice and facts disclosed to them by the plaintiff concerning the Emporia Store opening?
Answer: Yes ( )  No (X)

13. If your anwser to Question No. 12 is 'yes', state whether this reliance resulted in any damages to the defendants by the Plaintiff.
Answer: Yes ( )  No ( )
Does not apply

14. Was the plaintiff negligent in the management and operation of the pharmacies of the partnership?
Answer: Yes ( )  No (X)

15. If your answer to Question No. 14 is 'yes', state the acts of negligence committed by the plaintiff.
Answer: Does not apply

16. If your answer to Question No. 13 is 'Yes', state what award of money you think the defendants should be awarded to properly and fully compensate them for their damages.
Answer: $_____
Does not apply.

17. If your answer to Question No. 14 is 'Yes', state what award of money you think the defendants should be awarded to properly and fully compensate them for their damages.
Answer: $_____
Does not apply.

18. When the defendants voted to relieve the plaintiff as manager, does the evidence show that the plaintiff had failed to use his best efforts to obtain pharmacists who would work for the firm at Emporia?
Answer: Yes ( )  No (X)

19. State, if you know, when each of the partners learned that the stores were not properly licensed with the State Pharmacy Board.
Answer:  Carl F. Reed—Oct. 1966
Owen Chaffin—Dec. 1966
Bill Chaffin—Dec. 1966
Gary Chaffin—Dec. 1966
Larry McCue—Dec. 1966
Jim Wright—Oct. 1966

20. When the defendants voted to terminate the partnership does the evidence show that there has been or would be competition for pharmacists between the Emporia store and the partnership stores?
Answer: Yes ( )  No (X)

21. How much, if anything, did the partnership owe the plaintiff for salary on February 28, 1968?
    Answer: $1,750.00
            (700.00 back salary)
            (1,050.00 vacation pay)"

The plaintiff contends the answers are not inconsistent because the jury was not referring to the same cause of action in answering questions 2 and 7—that is, question 2 referred to the second cause of action for breach of the oral partnership agreement, and question 7 referred to the third cause of action for loss of salary by reason of ouster from the partnership management.

In answer to question 1 the jury found the oral partnership agreement was breached. In answer to question 2 the jury found it was the defendants who breached the agreement, and it further found the agreement was breached for the reason the defendants present at the meeting on February 28, 1968, removed plaintiff from the management of the partnership—"[t]hey fired the manager . . ." In answer to question 7 the jury found the plaintiff was not unlawfully or wrongfully ousted by the defendants from his position of manager, and it awarded no damages for such ouster under plaintiff's third cause of action.

Damages of $78,636 were awarded by the jury in answer to question 5 for breach of the oral partnership agreement. It is not clear from the record, but is contended by the plaintiff this amount was for breach of an agrement in the oral partnership contract to form a corporation once the business became established. Likewise, it is not clear whether the jury's award of damages was for breach of a contract to form a corporation, or for loss of future profits from the partnership, as alleged in the second cause of action. It should be stated, there were no allegations in the plaintiff's petition, or issue stated in the pretrial order, with respect to damages for the defendants' failure to form a corporation.

Federal Rule 49 is substantially the same as K. S. A. 60-249 (a), and interpretation of that Rule is persuasive. (Bott v. Wendler, 203 Kan. 212, 219, 453 P. 2d 100.) The authors of 2B Barron and Holtzoff, Federal Practice and Procedure, § 1057, pp. 350-352, state the rule with respect to a special verdict as follows:

"As to the legal sufficiency of a special verdict, the jury's findings on the essential issues must be certain and definite, and must not be conflicting or inconsistent.

"In determining whether there is inconsistency in the jury's findings, the findings are to be construed in the light of the surrounding circumstances and

in connection with the pleadings, instructions, and issues submitted. If a verdict is not certain in itself and does not find facts from which certainty can be attained, it is void. If the answers in respect to the controlling facts are inconsistent, the court should refuse to render a judgment and should declare a mistrial, but before doing so, may direct the jury to reconsider its verdict. Inconsistency in the findings, however, does not necessarily preclude the entry of a judgment if, as a matter of law, under no phase of the jury's findings and in no contingency could any other judgment be rendered. If there is conflict in the answers given by the jury it is not the province of the court to make additional findings of fact in an attempt to reconcile the answers."

3 Vernon's Kansas Statutes Annotated [Fowks, Harvey, Thomas], § 60-249, p. 206, states the following concerning the certainty of a special verdict:

"One of the important elements of the special verdict is exactness with respect to the issues submitted and the jury's finding on those issues. Therefore, the special verdict must be positive, certain and definite. If the answers with respect to controlling facts are conflicting or inconsistent, the verdict should not be accepted. The court should not attempt to make additional findings to reconcile conflicting or inconsistent answers, but it may in the proper case direct the jury to reconsider its verdict. Otherwise the court should declare a mistrial."

In the instant case, special findings 2 and 7 are patently inconsistent with one another—one showing a right to an award of damages, and the other showing the contrary. In such a situation, the case was left in the condition of actually being undecided.

The answers are so inconsistent as not to warrant this court in affirming entry of judgment on the jury's special verdict, and a new trial should be granted.

It is so ordered.

PRICE, C. J., FATZER and SCHROEDER, J., dissent.