No. 50,140

Henry Cantrell, *Appellee/Plaintiff*, v. Amarillo Hardware Company; Underwriters Laboratories, Inc.; and Raymond H. Moore, d/b/a Gambles, *Appellees/Defendants*, and R. D. Werner Company, Inc., *Defendant/Appellant*.

(602 P.2d 1326)

Opinion filed December 1, 1979.

*Arthur B. McKinley,* of McKinley & Miller, of Sublette, argued the cause and was on the brief for appellant.

*Jeff Johnson,* of Brollier, Wolf & Johnson, of Hugoton, argued the cause and *Paul A. Wolf,* of the same firm, was with him on the brief for appellee Henry Cantrell.

*Don O. Concannon,* of Concannon, Samson & Boelte, of Hugoton, was on the brief for defendant/appellee Underwriters Laboratories, Inc.

The opinion of the court was delivered by

Holmes, J.: This is an appeal in a products liability case, by defendant R. D. Werner Company, Inc., from a jury verdict granting plaintiff judgment for $13,500.00 actual damages and $18,500.00 punitive damages. The jury found no liability on the part of the codefendants Raymond H. Moore, d/b/a Gambles, and Amarillo Hardware Company. Underwriters Laboratories, Inc., also a defendant, was granted summary judgment on the second day of trial. We find no error in the trial court's rulings and affirm the judgments.

In February, 1974, the plaintiff Henry Cantrell purchased a Werner Saf-T-Master, Model 366, Mark V aluminum stepladder from a retail merchant, Raymond H. Moore, d/b/a Gambles. The ladder had been purchased by Moore from Amarillo Hardware Company, a wholesaler, and had been manufactured by Werner in January, 1974, and sold to Amarillo Hardware. Underwriters

had issued its seal of approval of the Mark V ladder to Werner. Werner first began construction of the Mark V in 1968.

On June 26, 1974, plaintiff was using the ladder at his place of business, in a proper manner and upon a clean, level concrete floor. As plaintiff proceeded up the ladder, the front rails or legs below the first step suddenly collapsed throwing plaintiff to the floor. He was knocked unconscious, suffered a Colles' fracture of the right wrist, bruises and abrasions to the head and face and soft tissue injuries to the back and hips. Expert testimony revealed permanent disability to plaintiff's right arm, back and hips.

Cantrell brought this action for actual and punitive damages against Werner, Amarillo Hardware, Moore, and Underwriters based upon a breach of express and implied warranties in the design, material and workmanship of the Mark V ladder and the failure to warn plaintiff of known defects in the ladder. Additional facts will be developed as we consider appellant's points on appeal.

Following the jury verdicts against Werner and in favor of Amarillo Hardware and Moore, Werner filed a motion for a directed verdict, new trial and/or a remittitur which was overruled by the trial court. Appellant's first point on appeal is that the court erred for a number of reasons in overruling the motion. On the second day of trial the court sustained a motion for summary judgment in favor of Underwriters. During pretrial proceedings, at the start of trial and during trial, Underwriters repeatedly moved for summary judgment. These motions were not opposed by Werner and, in fact, Werner conceded prior to trial that Underwriters was not a necessary or proper party. Werner now contends it was error to dismiss Underwriters from the case after trial had commenced. The crux of appellant's argument is that it would appear to the jury that "the good guys have been sent home and we will proceed against the bad guys." There were no counterclaims or cross-claims involving Underwriters and as plaintiff had no evidence which would support liability of Underwriters, the court was correct in its ruling and the complaint by appellant, if not frivolous, is without merit. K.S.A. 60-256. It might be noted that two of the "bad guys" received defendant's verdicts.

As a part of appellant's first point, it alleges numerous instances of misconduct by plaintiff's counsel, which it claims resulted in the jury rendering its verdict under the influence of prejudice and

passion. Appellant asserts six different areas in which it alleges plaintiff's counsel was guilty of intentional misconduct designed to inflame and prejudice the jury. We have carefully reviewed each allegation and find them all to be without merit. In addition, many of the instances of which appellant now complains were not objected to during trial and others were invited or precipitated by defendant during trial. Appellant's first point on appeal, considering all of its complaints individually and collectively, is without merit.

Appellant's second point is that the court erred in failing to sustain its motion for a directed verdict on the grounds of insufficient evidence. The evidence revealed that the Mark V ladder was an aluminum six-foot stepladder warranted to be satisfactory under loads of up to 200 pounds. Plaintiff weighed 165 pounds. The ladder, at the time in question, was in the same condition as when it left defendant's factory. The cardboard box covering the top of the ladder bore the following message:

"GOOD QUALITY; LIGHT-STRONG-SAFE; RATED LOAD 200 LBS; FOR SAFETY'S SAKE BUY ME. I'M LIGHT AND STRONG! FIVE YEAR GUARANTEE, SEE BACK PANEL. The manufacturer guarantees the ladder, under normal use and service to be free from defects in material and workmanship, for five years from date of purchase."

The ladder had not been misused or abused. At the time it collapsed it was being used upon a clean cement floor with all braces extended and locked. The ladder had two knee braces below the first step located at the front of the side rails and while this type ladder was in use, it had a tendency to twist resulting in both front legs buckling inward. The front legs of the ladder in question buckled inward throwing plaintiff to the cement floor. While the Mark V had previously been approved by Underwriters and met their requirements and those of the American National Standards Institute, defendant had been advised by Underwriters early in 1973 that certification would be withdrawn unless modifications were made and additional braces installed below the first step. Such notice had been received by Werner several months prior to the manufacture of the ladder. As early as 1973, Werner did install on other models two additional knee braces at the rear of the front rails below the first step, but continued to manufacture the model in question with only two braces. Records were admitted showing at least five prior claims against Werner

wherein the front rails on similar ladders had collapsed inward below the first step. No attempt has been made to summarize all the evidence favorable to plaintiff.

It has long been the rule that when a verdict is attacked for insufficiency of the evidence, "the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below." *Craig v. Hamilton,* 221 Kan. 311, 313, 559 P.2d 796 (1977).

Werner argues there is no evidence in the record indicating that any component, design feature or material used in the ladder was defective. Relying on *Wilcheck v. Doonan Truck & Equipment, Inc.,* 220 Kan. 230, 552 P.2d 938 (1976), Werner contends that the proof of a defect is the basic element necessary for recovery in an action founded upon breach of contract. We have no quarrel with the broad general statement in *Wilcheck* that "[r]egardless of the theory upon which recovery is sought for injury in a products liability case, proof that a defect in the product caused the injury is a prerequisite to recovery." Syl. ¶ 1.

The cause of action at bar is based on a breach of express warranty. K.S.A. 84-2-313 reads as follows:

"(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

When plaintiff purchased the ladder in question there was a cardboard cover on the top of the ladder which expressly warranted the ladder to be of good quality, light, strong and safe. It

also stated that the manufacturer (Werner) "guarantees the ladder, under normal use and service to be free from defects in material and workmanship, for five years from date of purchase." Werner argues that since plaintiff showed no specific defect in the ladder that an essential element necessary for the recovery of damages is lacking.

In *Huebert v. Federal Pacific Electric Co., Inc.,* 208 Kan. 720, 494 P.2d 1210 (1972), this court discussed the scope of express warranties by manufacturers as follows:

"A manufacturer may by express warranty assume responsibility in connection with its products which extends beyond liability for defects. All express warranties must be reasonably construed taking into consideration the nature of the product, the situation of the parties, and surrounding circumstances. However, defects in the product may be immaterial if the manufacturer warrants that a product will perform in a certain manner and the product fails to perform in that manner. Defects may be material in proving breach of an express warranty, but the approach to liability is the failure of the product to operate or perform in the manner warranted by the manufacturer." p. 725.

In *Huebert* this court quoted favorably from *Hansen v. Firestone Tire and Rubber Company,* 276 F.2d 254 (6th Cir. 1960), as follows:

" 'In an action of the present character, the burden of proof resting upon the plaintiff entails merely demonstration that the goods did not have the properties warranted. In the absence of controverting evidence adduced by the defendant, which convinces the jury that the goods were as warranted, plaintiff should prevail. *Herzler v. Manshum,* 228 Mich. 416, 200 N.W. 155. The plaintiff is not required to show the technical causation of the goods' failure to match their warranty. Nor is it necessary that the manufacturer's negligence be shown as the cause of such failure.' " p. 725.

See also *Scheuler v. Aamco Transmissions, Inc.,* 1 Kan. App. 2d 525, 571 P.2d 48 (1977).

Considering our scope of review, we have no hesitancy in finding there was sufficient competent evidence to support the jury's award of actual damages and that there was a violation of the express warranty of the appellant which was the cause of plaintiff's injuries.

Werner next argues there was no proof of such gross neglect of duty as to evince a reckless indifference to the rights of others required to sustain an award of punitive damages and that the verdict for punitive damages was so disproportionate and excessive that it offends any reasonable sense of justice and was granted under the influence of passion and prejudice.

The Court of Appeals has recently given an expansive discussion of the rules relating to punitive damages in the case of *Sanders v. Park Towne, Ltd.,* 2 Kan. App. 2d 313, 318-19, 578 P.2d 1131, *rev. denied* 225 Kan. 845 (1978):

> "[P]unitive damages 'are permitted whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy. (*Malone v. Murphy,* 2 Kan. 250; *Albert Wiley v. Keokuk,* 6 Kan. 94; and *Cady v. Case,* 45 Kan. 733, 26 Pac. 448.) Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive or a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs. (*Stalker v. Drake,* 91 Kan. 142, 136 Pac. 912; see, also, *Townsend v. Seefeld,* 102 Kan. 302, 169 Pac. 1157; and 15 Am. Jur., Damages, § 266, p. 700.)' *Watkins v. Layton,* 182 Kan. 702, 705, 324 P.2d 130 (1958)."

See also *Newton v. Hornblower, Inc.,* 224 Kan. 506, 582 P.2d 1136 (1978); *Koch v. Merchants Mutual Bonding Co.,* 211 Kan. 397, 402, 507 P.2d 189 (1973).

In *Henderson v. Hassur,* 225 Kan. 678, 594 P.2d 650 (1979), this court stated:

> "The law establishes no fixed ratio between actual and exemplary damages by which to determine excessiveness. In assessing punitive damages the nature, extent, and enormity of the wrong, the intent of the party committing it, and all circumstances attending the transaction involved should be considered. Any mitigating circumstances which may bear upon any of the above factors may be considered to reduce such damages. *Will v. Hughes,* 172 Kan. 45, 55, 238 P.2d 478 (1951). In fixing an award of punitive damages a jury may consider the amount of actual damages recovered, defendant's financial condition and the probable litigation expenses. *Ayers v. Christiansen,* 222 Kan. 225, 229, 564 P.2d 458 (1977)." p. 694.

Where a charge of excessive verdict is based on passion or prejudice of the jury, but is supported solely by the size of the verdict the trial court will not be reversed for not ordering a new trial, and no remittitur will be ordered unless the amount of the verdict in light of the evidence shocks the conscience of the appellate court. See *Kirk v. Beachner Construction Co., Inc.,* 214 Kan. 733, Syl. ¶ 1, 522 P.2d 176 (1974); *George v. Bolen-Williams, Realtors,* 2 Kan. App. 2d 385, 580 P.2d 1357 (1978).

In the case at bar the jury awarded plaintiff $18,500 in punitive damages. There was evidence that in at least five prior instances the front rails of ladders of the same model as the one used by plaintiff and manufactured by Werner had collapsed in the same manner. There was also evidence that Werner had made design

changes in order to strengthen the rails of the ladder by adding additional braces, that Underwriters Laboratories was withdrawing its certification unless corrective measures were taken, that defendant had notice of the ladder's weaknesses many months prior to the manufacture of the ladder in question, yet continued to manufacture and market the ladder even after corrective designs and measures had been determined and agreed upon with Underwriters. There was adequate evidence from which the jury might have found a reckless disregard of plaintiff's rights and the amount of the award for punitive damages does not shock the conscience of this court.

Finally, appellant argues the trial court abused its discretion when it refused to admit in evidence an 8mm film of tests conducted by Werner and testimony of defendant's witness and employee, John Boenke, as to tests conducted by his department. The pretrial order disclosed that Werner had an 8mm film of its testing procedures which it intended to offer in evidence. Defendant was ordered to submit the film to plaintiff for examination and viewing but failed to do so even though plaintiff's counsel made repeated requests for it. The record is not clear whether the film was excluded for the reason defendant refused to comply with discovery orders or because an insufficient foundation was laid for its admittance. It also appears that the defendant failed or refused to supply plaintiff with copies of the test reports that the witness Boenke wanted to testify about. Regardless of the grounds that the court utilized in excluding the film and testimony, we find no abuse of discretion by the trial court. *State v. Jones,* 209 Kan. 526, 498 P.2d 65 (1972); *Howard v. Stoughton,* 199 Kan. 787, 433 P.2d 567 (1967).

The judgment is affirmed.

FROMME, J., not participating.