No. 52,104

KERNIE W. BINYON and HILDA BINYON, *Appellees,* v. ROY NESSETH, *et al., Appellants.*

(646 P.2d 1043)

Opinion filed June 11, 1982.

*Craig Kennedy,* of Kassebaum & Johnson, of Wichita, argued the cause and was on the brief for the appellant.

*Robert T. Cornwell,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This case is before the court on a Petition for Review of the Court of Appeals published opinion, *Binyon v. Nesseth,* 7 Kan. App. 2d 110, 638 P.2d 946 (1981).

Roy Nesseth (defendant-appellant) appealed a decision of the Sedgwick County District Court, rendering default judgment against him for $9,326.06 actual and $100,000.00 punitive damages for fraud on the lease of a 1976 Cadillac to plaintiffs. The default was imposed as a sanction pursuant to K.S.A. 60-237(*b*)(2) for failure to comply with court orders regarding discovery. The Court of Appeals affirmed the district court's decision, and we granted review.

The facts are undisputed, and we will summarize them in this opinion. Extensive portions of the journal entry of judgment are set out in the Court of Appeals opinion, 7 Kan. App. 2d at 111-13.

On July 15, 1976, Dr. and Mrs. Kernie W. Binyon went to Dahlinger Pontiac-Cadillac, Inc. (Dahlinger) in Wichita to buy or lease an automobile. Discussions with Dahlinger employees resulted in a decision to lease. A lease agreement for a 1976 Cadillac was reached some time after 5:00 p.m. The specific provisions of the lease agreement are not relevant to this appeal; it was basically a lease for two years with monthly rental payments and one balloon payment at the expiration of the lease should the Binyons decide to purchase the Cadillac. Personal property taxes and license tags were to be paid by the dealership. Because of the late hour, the Binyons signed a blank printed lease form with the understanding it would be completed in accordance with the terms agreed upon.

The Binyons timely made all monthly rental payments, but they were deprived of use of the automobile for a period of time due to a dispute with Dahlinger over payment of the personal property taxes and license tag fees. Nesseth apparently decided the lease as entered provided an insufficient margin of profit for the dealership. Although the lease retained by Dahlinger in its files provided Dahlinger was to pay personal property taxes and furnish license tags, Nesseth caused to be furnished to the Binyons a lease which provided the contrary. This lease and assignment of the monthly payments due under it to General Motors Acceptance Corporation (G.M.A.C.) led to a tangle of circumstances resulting in the Binyons' suit against Nesseth, Dahlinger, G.M.A.C., and the Kansas Department of Revenue. Only the proceedings relative to Nesseth are pertinent to this appeal.

After repeated unsuccessful attempts to force Nesseth's compliance with discovery orders, the court entered a default judgment pursuant to K.S.A. 60-237(*b*)(2). In its journal entry of judgment, the trial court found:

"28. The foregoing acts, omissions and refusals to act of and by Nesseth, were done maliciously, fraudulently and willfully, with total and wanton disregard for the rights of Plaintiffs, were oppressive and unlawful and were done for the purpose and intent of defrauding Plaintiffs, for his own personal benefit and gain.

"29. At all times material hereto, Nesseth has controlled Dahlinger; as the alter ego of Dahlinger, Nesseth has, at all times material hereto, conducted, managed and controlled the affairs of Dahlinger as though it were his own business . . . ."

The court awarded plaintiffs actual and punitive damages for fraud in the leasing of the automobile to plaintiffs.

Nesseth timely perfected appeal to the Court of Appeals, raising three issues: (1) Default judgment as a sanction for refusal to permit discovery, under the facts of this case, was so severe as to constitute an abuse of discretion; (2) he was given inadequate notice of the proposed entry of the default judgment; and (3) the $100,000 punitive damage award was so excessive as to constitute an abuse of discretion. The Court of Appeals affirmed the district court, and defendant Nesseth sought this court's review of those three issues. Review was granted.

Defendant admits in his brief on Petition for Review that the general principles governing sanctions for refusal to make discovery are well summarized in the Court of Appeals decision. He contends, however, that a careful review of his responses to interrogatories and requests for production of documents will reveal abuse of discretion in ordering default in this case. We will reverse our normal order of discussion and review the general principles before detailing Nesseth's conduct.

Both Kansas appellate courts have recognized the severity of judgment by default as a sanction for failure to comply with discovery orders, and each court has emphasized the importance of careful exercise of judicial discretion before imposition of that sanction. *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 677-78, 522 P.2d 449 (1974); *Williams v. Consolidated Investors, Inc.,* 205 Kan. 728, 733, 472 P.2d 248 (1970); *Independent Mfg. Co. v. McGraw-Edison Co.,* 6 Kan. App. 2d 982, 988, 637 P.2d 431 (1981); *Fields v. Stauffer Publications, Inc.,* 2 Kan. App. 2d 323, 328, 578 P.2d 1138, *rev. denied* 225 Kan. 843 (1978); *Prather v. Olson,* 1 Kan. App. 2d 142, 147, 562 P.2d 142 (1977).

In its opinion reported in 7 Kan. App. 2d at 114-15, the Court of Appeals identified the prerequisites to imposition of the sanction of default. Those factors, enumerated below, aid an appellate court in determining whether a trial court abused its discretion in ordering default. (1) Was the discovery sought related to a dispositive issue? See, *e.g., Vickers v. City of Kansas City,* 216 Kan. at 93. (2) Was discovery not available by alternative means? Or could the party seeking discovery not be protected by imposition of another sanction? See, *e.g., Vickers v. City of Kansas City,* 216 Kan. at 93. (3) Was the defendant afforded a hearing at which he could have offered evidence of excusable neglect or good faith? See, *e.g., Lorson v. Falcon Coach, Inc.,* 214 Kan. at 677-78,

quoting *Williams v. Consolidated Investors, Inc.*, 205 Kan. at 733; *Mansfield Painting & Decorating, Inc. v. Budlaw Services, Inc.*, 3 Kan. App. 2d 77, 81, 589 P.2d 643, *rev. denied* 225 Kan. 844 (1979). See generally *Fields v. Stauffer Publications, Inc.*, 2 Kan. App. 2d 323.

The standard of review on appeal is abuse of discretion. *Lorson v. Falcon Coach, Inc.*, 214 Kan. at 678. "Thus, the trial judge will be reversed only where no reasonable man would take the view adopted by the trial court." *Fields v. Stauffer Publications, Inc.*, 2 Kan. App. 2d at 328. See also *Vickers v. City of Kansas City*, 216 Kan. at 92.

With these principles in mind we turn to the facts in this case. The Court of Appeals set out a chronology of events in 7 Kan. App. 2d at 113-14 to which we refer the reader. In brief, that chronology reveals four full months of delay and dilatory tactics in the face of numerous orders by the court to answer interrogatories, be deposed, or produce documents. At that point plaintiffs filed their motion for sanctions. A hearing was held on that motion June 8, 1979. The court found a deliberate attempt on the part of Nesseth to frustrate the progress of the lawsuit. In sustaining plaintiffs' motion to impose sanctions, the court: (1) Ordered Nesseth's answer and counterclaim stricken; (2) prohibited him from presenting any claims, asserting any defenses, or presenting any evidence; and (3) ordered a default hearing at a later time for plaintiffs' presentation of evidence to support their claim. K.S.A. 60-237(*b*)(2)(B), (C).

The information sought by plaintiffs related to the lease of the car and Nesseth's relationship with Dahlinger. It was information unavailable to the plaintiffs from other sources. Nesseth had the lease under his control, he passed the certificate of title to G.M.A.C., and he controlled documentation of his dealings with Dahlinger funds. Over the course of four months, five at the time of the hearing on the sanctions, one oral deposition had been begun but recessed before completion, no satisfactory answers to interrogatories had been obtained, and no documents had been produced. Any lesser sanctions than those imposed would have allowed Nesseth to profit from the course of delay he pursued. In addition, he offered no credible justification for his conduct at the June 8 hearing on the motion.

Adequate sanctions are necessary for the enforcement of dis-

covery procedures. 8 Wright and Miller, Federal Practice and Procedure: Civil § 2281 (1981 Supp.); Wright, Handbook of the Law of Federal Courts § 90 (3rd ed. 1976). A review of the record reveals a willful and deliberate disregard of reasonable and necessary orders of the court. We cannot say the trial court abused its discretion in ordering the most severe of sanctions.

Defendant's second point on appeal relates to the notice he received of the evidentiary hearing on plaintiffs' claim. The order imposing sanctions was entered June 8, 1979. On March 25, 1980, plaintiffs filed their application for default judgment, with the hearing three days after. Notice was mailed to Nesseth in California. On March 28, 1980, the court heard evidence relating to the damages issue and entered judgment. On April 17, 1980, Nesseth moved to set aside the default judgment pursuant to K.S.A. 60-260(*b*)(1), (4), (6), alleging improper notice. That motion was overruled.

K.S.A. 60-255(*a*) provides in pertinent part:

"Upon request and proper showing by the party entitled thereto, the judge shall render judgment against a party in default for the remedy to which the party is entitled. . . . If the party against whom judgment by default is sought has appeared in the action, he or she (or, if appearing by representative, his or her representative) shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application."

On appeal, the defendant contends that, since service was by mail, he was entitled to three extra days' notice, citing K.S.A. 60-206(*e*):

"*Whenever a party has the right or is required to do some act or take some proceedings* within a prescribed period after the service of a notice or other paper upon him or her *and the notice* or paper *is served* upon him or her *by mail*, three (3) days shall be added to the prescribed period." (Emphasis added.)

Assuming, as the Court of Appeals did, that the issue is properly before us, defendant had neither the right nor the duty to take any action in response to the notice. The sanctions imposed by the trial court precluded presentation of claims, assertion of defenses, or presentation of evidence. Defendant, in his briefs, cites federal cases in support of his contention that he was still in court on the issue of damages despite the imposition of sanctions. Cases interpreting the Federal Rules of Civil Procedure are persuasive authority in interpretation of our own discovery rules because of the substantial similarity between the federal and

Kansas rules. See, *e.g., Brookover Feed Yards, Inc. v. Carlton, Commissioner,* 213 Kan. 684, 690, 518 P.2d 470 (1974); *Reed v. Chaffin,* 205 Kan. 815, 819, 473 P.2d 102 (1970); *McCabe v. Board of Johnson County Comm'rs.,* 5 Kan. App. 2d 232, 235, 615 P.2d 780 (1980). The federal cases cited by the defendant, however, are distinguishable because in them the court had not precluded participation as part of the sanction. The trial court did not abuse its discretion in refusing to set the default judgment aside for lack of adequate notice.

Defendant's final contention is that the $100,000 punitive damage award was so excessive as to constitute an abuse of discretion. Again, the defendant acknowledges the Court of Appeals decision correctly states the principles governing the award of punitive damages.

An appellate court will not find a punitive damage award excessive unless it is of a size to shock the conscience of the appellate court. See, *e.g., Cantrell v. R. D. Werner Co.,* 226 Kan. 681, 686, 602 P.2d 1326 (1979); *Henderson v. Hassur,* 225 Kan. 678, 697, 594 P.2d 650 (1979). The Court of Appeals in 7 Kan. App. 2d at 118 quoted *Henderson v. Hassur* on principles of law governing the extent of punitive damages allowed. That portion of *Henderson* reads:

"It is difficult, if not impossible, to lay down precise rules by which to test the question of when a verdict for punitive damages is excessive. *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, 273, 133 P.2d 149 (1943). Punitive damages are imposed by way of punishing a party for malicious or vindictive acts or for a willful and wanton invasion of another party's rights, the purpose being to restrain him and to deter others from the commission of like wrongs. *Koch v. Merchants Mutual Bonding Co.,* 211 Kan. 397, 402, 507 P.2d 189 (1973). The law establishes no fixed ratio between actual and exemplary damages by which to determine excessiveness. In assessing punitive damages the nature, extent, and enormity of the wrong, the intent of the party committing it, and all circumstances attending the transaction involved should be considered. Any mitigating circumstances which may bear upon any of the above factors may be considered to reduce such damages. *Will v. Hughes,* 172 Kan. 45, 55, 238 P.2d 478 (1951). In fixing an award of punitive damages a jury may consider the amount of actual damages recovered, defendant's financial condition and the probable litigation expenses. *Ayers v. Christiansen,* 222 Kan. 225, 229, 564 P.2d 458 (1977)." 225 Kan. at 694.

See also *Cantrell v. R. D. Werner Co.,* 226 Kan. at 686; *Newton v. Hornblower, Inc.,* 224 Kan. 506, 524-25, 582 P.2d 1136 (1978); *Townsend v. Seefeld,* 102 Kan. 302, 306, 169 Pac. 1157 (1918);

*U.S.D. No. 490 v. Celotex Corp.,* 6 Kan. App. 2d 346, 356, 629 P.2d 196 (1981); *Sanders v. Park Towne, Ltd.,* 2 Kan. App. 2d 313, 318-19, 578 P.2d 1131 (1978); 25 C.J.S., Damages §§ 117(1)-127.

The Court of Appeals considered the trial court's findings, the defendant's net worth, and the amount of actual damages and concluded the collective conscience of the court was not shocked by the amount of the award.

The Court of Appeals found, and our reading of the record substantiates, that the amount was not increased as an additional sanction for defendant's refusal to make discovery.

We have some difficulty with the use of evidence of defendant's expenditure of corporate assets for his personal benefit. A careful review of the trial court's findings and the record in the case reveals isolated statements which suggest outrage with Nesseth's general course of conduct. Like the Court of Appeals, however, we conclude "their main purpose to have been to demonstrate Nesseth's domination and control of the corporation so as to justify piercing the corporate veil." 7 Kan. App. 2d at 119. We find no abuse of discretion in the amount of punitive damages awarded by the trial court.

The judgment of the trial court and the Court of Appeals is affirmed.

FROMME, J., dissenting in part. While I concur in that part of the majority opinion which affirms the judgment by default as a sanction for failure to comply with discovery orders, I dissent from that part of the opinion which approves a $100,000.00 punitive damage award.

The amount found by the trial court to be the actual damages suffered by Dr. and Mrs. Binyon was $9,326.06. When I consider the acts which the court considers to have justified the punitive damage award, I am shocked by the allowance of $100,000.00 punitive damages.

What was the basis for this allowance? Roy Nesseth determined the profit for the dealership under the lease to the Binyons was insufficient and refused to have the dealership comply with the provisions in the lease. He refused to pay the personal property taxes or furnish license tags and he apparently added provisions in the lease to indicate the dealership was not responsible for these items. Nesseth was guilty of having no intention of honoring the lease to the Binyons. I do not condone his actions, but on

the basis of the foregoing facts it is apparent to me the trial court not only imposed the sanction of default judgment but also an additional sanction by increasing the amount of punitive damages. Therefore, I dissent from the $100,000.00 award of punitive damages.

HERD, J., joins the foregoing dissenting opinion.