NOT DESIGNATED FOR PUBLICATION

No. 113,320

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of:
M.L.K., Born:  1998, a Minor Child.
B.R.V. and A.L.S.-V.,
*Petitioners*.


MEMORANDUM OPINION


Appeal from Wyandotte District Court; KATHLEEN M. LYNCH, JR., judge. Opinion filed March 11, 2016. Affirmed.


*Serena A. Hawkins*, of Kansas City, for appellant natural father.


*Kevin W. Kenney*, of Kevin W. Kenney, P.A., of Prairie Village, for petitioners/appellees.


Before MALONE, C.J., SCHROEDER, J., and BURGESS, S.J.


*Per Curiam*:  Stepfather filed a petition in Wyandotte County District Court seeking to adopt his stepdaughter, M.L.K. Father, incarcerated in Wisconsin at the time, did not consent to the adoption and Stepfather sought to terminate Father's rights due to his failure to assume parental duties for the 2 years immediately preceding the filing of the petition. Father failed to comply with multiple discovery requests and the district court sanctioned him by prohibiting any defenses to the unanswered discovery into evidence. After a trial, Father's rights were terminated and he now appeals the imposition of the discovery sanction. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A.L.S.-V. (Mother) and J.K. (Father) were married on February 27, 1998. The couple had a daughter, M.L.K. born on August 9, 1998. Mother alleged that during their marriage Father was physically and emotionally abusive toward her and M.L.K. Mother and Father were divorced on April 30, 1999, and Father was ordered to pay $225 per month in child support. On August 3, 2001, Mother petitioned and was granted sole legal custody of M.L.K. Mother sought sole custody of M.L.K. because Father was involved with drugs. Mother married B.R.V. (Stepfather) on June 29, 2002. On March 21, 2014, Stepfather filed a petition to adopt M.L.K. In the petition, Stepfather alleged Father's consent was not necessary because he failed to assume the duties of a parent for 2 consecutive years prior to the filing of the petition and because he was an unfit parent. Mother also consented to the adoption.

At the time the petition was filed, Father was incarcerated in Wisconsin for convictions of theft and misappropriate ID. Since the decree of divorce was finalized, Father had paid approximately $250 total in child support. This amounted to less than 1 percent of the total amount of child support owed.

After Stepfather filed the petition, Father sent a letter to the district court contesting the adoption. Father was appointed an attorney and on June 27, 2014, Stepfather sent him interrogatories and a request for production of documents. On August 22, 2014, Stepfather filed a petition for order compelling discovery. The petition stated Stepfather had sent a "Golden Rule" letter to Father's attorney on August 11, 2014. On August 27, 2014, the district court held a phone conference with the parties with Father appearing from prison and his attorney appearing in person. According to the docket notes, the court ordered, "if (Defendant) does not comply w[ith] discovery by 9/2/14 no defenses from interrogatories or witness[es] will be allowed into [evidence]." Another conference was held on September 4, 2014, in which the district court granted Father a

continuance over Stepfather and Mother's objection. On September 12, 2014, Stepfather sent Father's attorney his Request for Admissions. On September 30, 2014, Father's attorney filed a motion to withdraw noting Father had notified him and told him he wished to terminate his services. The district court granted the motion and appointed Father a new attorney on October 10, 2014. The case was set for trial on November 3, 2014, which was continued to December 8, 2014. The case was continued again to January 5, 2015. Two days prior to the trial, Father's attorney filed a motion to reconsider the sanctions alleging Father was unable to comply with discovery requests because he was unable to get in touch with his attorney and did not receive instructions on how to return the discovery. At trial, Stepfather's attorney argued against the motion alleging Father had originally stated he could not comply with discovery because he could not afford the postage. The trial court denied the motion to reconsider sanctions.

At trial, Father attempted to discuss various issues including the child support arrearage and what contact he had with M.L.K. The trial court sustained Stepfather's objections noting the discovery sanctions prevented Father's attorney from eliciting any defenses to information that was sought in the unanswered discovery requests. At the conclusion of the trial the court found Father had not rebutted the statutory presumption he had not assumed the duties of a parent in the past 2 years because he had failed to pay child support. The trial court noted the Father had not sought a child support reduction at any time and that incarceration did not excuse his failure to pay child support. The trial court also found Father was unfit based on the alleged drug use and abusive behavior. The trial court then terminated Father's parental rights. Father now appeals the discovery sanctions that were imposed that prevented him from presenting certain evidence at the trial.

## DID THE DISTRICT COURT ERR IN IMPOSING DISCOVERY SANCTIONS ON THE DEFENDANT?

Father argues the district court abused its discretion when it sanctioned him for failing to comply with discovery. Father contends the sanction was unreasonable because he was incarcerated and had limited resources available to assist him in complying with the discovery request. Father claims these sanctions severely inhibited his ability to present his case regarding his parental fitness. Specifically, he claims he was unable to present any evidence to rebut the statutory presumption that he failed to assume the duties of a parent for 2 years due to his failure to pay child support.

For background reference, K.S.A. 2015 Supp. 59-2136(d) governs stepparent adoptions. Under the statute, a biological father's consent is necessary unless the father has "failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption or is incapable of giving such consent." K.S.A. 2015 Supp. 59-2136(d). The statute also contains a rebuttable presumption that:

> "if the father, after having knowledge of the child's birth, has knowingly failed to provide a substantial portion of the child support as required by judicial decree, when financially able to do so, for a period of two years next preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent." K.S.A. 2015 Supp. 59-2136(d).

The court is also allowed to consider the best interests of the child and the fitness of the nonconsenting parent in determining whether the adoption should be granted. The court may "disregard incidental visitations, contacts, communications, or contributions." K.S.A. 2015 Supp. 59-2136(d).

In the present case, the district court sanctioned Father for failing to comply with discovery requests by prohibiting him from presenting any defenses to any of the issues

raised in discovery. This sanction came after an order compelling discovery and an oral warning from the district court during a phone hearing that Father would be sanctioned if he did not comply with discovery requests by September 2, 2014. At trial, the court sustained Stepfather's objections when Father attempted to testify about his contact with M.L.K or reasons why he failed to pay child support.

This court is therefore tasked with deciding whether the discovery sanction imposed on Father by the district court was unreasonable.

The imposition of sanctions for failure to comply with discovery orders is within the district court's discretion. *Canaan v. Bartee*, 272 Kan. 720, 726, 35 P.3d 841 (2001) (*Canaan I*). A court's decision to impose discovery sanctions must be reviewed for an abuse of discretion. 272 Kan. at 726.

A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Discovery rules in Kansas should be interpreted broadly to accomplish their intended objectives of eliminating surprise from trial and simplifying issues and procedures. *Burkhart v. Philsco Products Co., Inc.,* 241 Kan. 562, 570, 738 P.2d 433 (1987); see also *Ryan v. Kansas Power & Light Co.*, 249 Kan. 1, 11-12, 815 P.2d 528 (1991) ("The purpose of discovery is to eliminate the element of surprise from trials, to simplify issues and procedures by full disclosure to all parties of anticipated evidence and factual and legal issues, and to consider such matters as may aid in the disposition of an action."); *Hawkins v. Dennis*, 258 Kan. 329, 341, 905 P.2d 678 (1995) ("The essence of discovery is a search for the truth. It is not a game but an enlightened procedure to encourage the resolution of cases based on merit and not on surprise and ambush.").

K.S.A. 2015 Supp. 60-237 provides sanctions for a court to use against parties "unjustifiably resisting discovery." *Vickers v. City of Kansas City*, 216 Kan. 84, 90, 531 P.2d 113 (1975). These sanctions range in severity from accepting matters sought in unanswered discovery as true, to excluding certain claims or defenses from evidence, to default judgment or dismissal. K.S.A. 2015 Supp. 60-237(b)(2). The statute specifically states that if a party fails to comply with a court's order to compel discovery, "the court where the action is pending may issue further just orders" which may include:

"(i) Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) *prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;*

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." (Emphasis added.) K.S.A. 2015 Supp. 60-237(b)(2).

Although the district court in the present case did not formally journalize its decision to impose sanctions on Father (or at least no such journal entry exists in the current record), it can be inferred from the district court's docket notes and its ruling at trial that it intended to sanction Father under K.S.A. 2015 Supp. 60-237(b)(2)(ii): "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."

A district court has broad discretion to choose amongst the statutorily provided discovery sanction options, "the most appropriate sanction suitable to the history and circumstances of the case before him." *Vickers*, 216 Kan. at 91. A sanction should be

"designed to accomplish the objects of discovery rather than for the purpose of punishment." *Canaan I*, 272 Kan. at 728. Further, the purpose of the sanction should be "to prevent the noncomplying party from profiting from its violation of the court's order and to protect the party which had requested discovery." *Hawkins*, 258 Kan. at 341.

Kansas appellate courts have reviewed discovery sanctions for an abuse of discretion, particularly when the sanction results in dismissal or default judgment. The Kansas Supreme Court has noted that "[w]here the evidence shows that a party has acted in deliberate disregard of reasonable and necessary court orders and the party is afforded a hearing and an opportunity to offer evidence of excusable neglect, the imposition of a stringent sanction will not be disturbed." *Canaan I*, 272 Kan. at 726-27. When, however, a party failed to comply with a discovery order due to inability to comply rather than in bad faith, "a severe sanction such as dismissal or default probably would be inappropriate." 272 Kan. at 727. A severe sanction such as dismissal or default judgment should only be used as a "last resort when other lesser sanctions are clearly insufficient to accomplish the desired end." 272 Kan. at 727. The *Canaan* court used a three-part test to determine whether a court abused its discretion in granting default judgment for failure to comply with discovery orders: "(1) Does the discoverable material go to a dispositive issue in the case? (2) Are alternative sanctions sufficient to protect the party seeking discovery available? and (3) Is the requested information merely cumulative or corroborative?" 272 Kan. at 727.

Kansas courts have often upheld sanctions imposed on parties, including dismissal and default judgment, where a party deliberately obstructs the discovery process or willfully refuses to comply with discovery orders. 4 Gard, Casad, and Mulligan's Kansas C. Civ. Proc. 2d. Annot. § 60-237, p. 234 (5th ed. 2012). For example, in *Binyon v. Nesseth*, 231 Kan. 381, 646 P.2d 1043 (1982), *superceded by statute on other grounds* as stated in *Smith v. Printup*, 262 Kan. 587, 596-97, 938 P.2d 1261 (1997), the Kansas Supreme Court upheld a district court's granting of default judgment as a sanction for

7

willfully and deliberately disregarding court orders regarding discovery. The court noted the record had revealed defendant's 4 month chronology of "delay and dilatory tactics in the face of numerous orders by the court to answer interrogatories, be deposed, or produce documents." *Binyon*, 231 Kan. at 384. The district court had imposed lesser sanctions on the defendant and ultimately granted the plaintiff's motion for default judgment after the defendant's continued refusal to comply and failure to offer any justification for his noncompliance. The Kansas Supreme Court affirmed the default judgment noting "[a]dequate sanctions are necessary for the enforcement of discovery procedures." 231 Kan. at 384-85.

*Binyon* can be contrasted with the Kansas Supreme Court's finding that a district court abused its discretion in dismissing a case as a discovery sanction in *Vickers*, 216 Kan. 84. In *Binyon*, the court considered the same factors used in the test cited in *Vickers*. *Binyon*, 231 Kan. at 383-84. The court, citing the United States Supreme Court's decision in *Societe International v. Rogers*, 357 U.S. 197, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958), noted dismissal is not a proper sanction if the failure to comply with the discovery order was due to inability and not due to willfulness, bad faith, or any fault of the party who failed to comply. *Vickers*, 216 Kan. at 92-93. The court found the plaintiff made a good faith effort to comply with discovery but had failed to produce a few requested documents and, therefore, a lesser sanction would have sufficed. 216 Kan. at 93-94.

In the present case, Stepfather asks this court to apply the test used in *Canaan* and *Vickers* to decide whether the district court abused its discretion. While the factors in the test could be relevant in the analysis, this test is specifically used for deciding whether a district court abused its discretion in *dismissing the case or entering a default judgment*—the most severe of the discovery sanctions. In the present case, the district court imposed a less severe sanction under K.S.A. 2015 Supp. 60-237(b)(2)(ii) and prohibited Father from testifying about his failure to pay child support and the contact he had with M.L.K.

Stepfather cites no authority where a court has used the test in *Canaan* to review lesser sanctions and a search of caselaw has not revealed any such authority. In the Kansas Supreme Court's second review of the *Canaan* case, the court found the district court did not abuse its discretion when it declined to sanction the party for discovery noncompliance by imposing a $100,000 fine unrelated to any actual costs. See *Canaan v. Bartee*, 276 Kan. 116, 135, 72 P.3d 911, *cert. denied* 540 U.S. 1090 (2003) (*Canaan II*). The court notably did not apply the same test from *Canaan I* and instead reiterated that the purpose of sanctions is to accomplish the objects of discovery rather than the purposes of punishment. *Canaan II*, 276 Kan. at 135. In applying that logic, and the overall purposes of discovery, the district court did not abuse its discretion here. Father was given multiple opportunities to comply with requests and orders and was orally warned at least once by the district court that his failure to comply would result in sanctions. It is only in the interests of judgment and fairness to Stepfather that he should not be able to introduce evidence at trial that he refused to provide in court ordered discovery.

Additionally, the district court could have entered default judgment based on Father's repeated failures to comply. The district court instead imposed a lesser sanction which was very reasonable considering the apparent total lack of effort to comply. Father's allegations that his noncompliance was not in bad faith, rather, was a result of his lack of resources due to his being incarcerated. Father argues even this lesser sanction was too harsh because he did not know how to comply with discovery and he was unable to get in touch with his attorney. On appeal, Father places most of the fault on his attorney and infers his attorney's lack of contact and assistance with discovery was the reason he asked his attorney to withdraw. Nothing in the record, however, supports this allegation and it is not this court's place to make its own findings of fact. If, in fact, the attorney was responsible for Father's noncompliance with discovery orders, that is an issue which is not properly before the court at this time. Regardless of who is at fault for

9

the noncompliance, Stepfather still had the right to reasonable discovery in preparing for the case, and the district court did not abuse its discretion in imposing sanctions.

In all events, Father's claims that his failure to comply with discovery was not due to bad faith seems somewhat dubious after a review of the record. His claims that he did not know when the discovery was due is very weak in that the requested discovery included that date. Further, he was told very specifically by the court at the hearing to compel discovery of what needed to be done and when it needed to be done. He says he could not contact his attorney, but he was clearly able to contact his attorney to tell him he was terminating counsel's services. The record clearly establishes that Father was able to send letters, including one to the district court, but yet he failed to make any contact whatsoever with anyone to seek assistance in complying with the discovery request or seeking additional time to do so. Even though new counsel for Father was appointed on October 10, 2014, the motion to reconsider sanctions was not filed until January 2, 2015. Father could have substantially strengthened the motion to reconsider sanctions by informing the court that all discovery requests had been completed. But no such effort was made, and the record does not reflect that Father ever attempted to answer the interrogatories and request for production of documents from the date the discovery was served on June 27, 2014, to the final date of the hearing on January 5, 2015.

Father also contends the district court not allowing him to present evidence violated his constitutional right to parent his child and argues the court should have chosen a less harsh sanction. A hearing involving the termination of parental rights is a civil action. See *In re J.D.C.*, 35 Kan. App. 2d 908, 913, 136 P.3d 950 (2006), *aff'd* 284 Kan. 155, 159 P.3d 974 (2007). Parents have a fundamental right under the Fourteenth Amendment to the United States Constitution to the custody and control of their children, and this right cannot be taken away without due process of the law. 35 Kan. App. 2d at 914. The Kansas Supreme Court has noted that courts may look to the rules of civil procedure in parental termination cases to ensure due process is met. See *In re Woodard*,

10

231 Kan. 544, 551, 646 P.2d 1105 (1982) (Noting that courts could look to the rules of civil procedure and other types of civil cases to determine the requirements of valid constructive service because "[i]t would seem only logical that due process of law would require at least comparable safeguards in a proceeding in which a parent might lose his or her child as would be required if that same person was a party to an action in which the loss of money or property was at stake" because "[f]undamental fairness, which is the benchmark of due process, requires nothing less."). Father points to no caselaw to support his argument that because his parental rights were at stake he was entitled to disregard the rules of civil procedure. Further, his assertion he should be due a less harsh sanction because his parental rights were at stake is also misguided. The district court chose one of the least harsh sanctions amongst those provided in the statute. The district court did not abuse its discretion in sanctioning Father under K.S.A. 2015 Supp. 60-237(b)(2)(ii).

In conclusion, it cannot be said that no reasonable person would take the action the court did in this case. The court reasonably exercised its discretion in imposing a statutorily provided discovery sanction when Father failed to comply with discovery requests multiple times. For these reasons we affirmed the district court's ruling.

Affirmed.